AXEL BESKOW, Respondent, Appellant, *v.* HULDA B. HALOW and CONSIGNMENT ARTS, INC., Appellants, Respondents.

First Department, April 27, 1928.

**Contracts — accounting — plaintiff seeks accounting for certain works of art consigned to defendant corporation for sale — evidence shows that plaintiff is entitled to accounting — corporations — individual defendant, officer of corporation, is not liable.**

The plaintiff delivered certain works of art to the defendant corporation for sale on a ten per cent commission basis. One picture was delivered to a third person and the defendant contends that it received in payment therefor part cash, a painting and a rug. It appears that the painting received in exchange was returned to the owner and the rug has disappeared. The evidence shows that when the defendant corporation delivered the painting to the third person, it was in settlement of its account with him, and that said third person paid the defendant corporation no cash whatever. Therefore, the defendant corporation must account for the value of that painting.

Furthermore, the consignment of the works of art to the defendant corporation was for sale for cash, and not for the purpose of trading, and the defendant corporation violated its contract if it did trade one of the paintings for another painting and a rug.

In reference to two other works of art, the defendant corporation represented that they were sold for $8,000, and it credited plaintiff with $7,200, which amount was ten per cent less than the sale price. However, the defendant corporation sold said works of art for $12,500 and it must account for that amount less its commissions.

Several other works of art were sold by the defendant corporation and nothing has been paid thereon, and it must account to the plaintiff for them or for the consignment price of them.

The contention of the plaintiff that the individual defendant, who is the principal stockholder and treasurer of the defendant corporation, should be charged with the value of the works of art, cannot be sustained, for there is nothing in the evidence to justify the court in disregarding the corporate entity.

CROSS-APPEALS from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 25th day of April, 1927.

The judgment directed the defendants to account and that their accounts, respectively, be charged with various sums, and it appointed a referee to take and state the accounts.

*Frederick Hulse* of counsel [*Eidlitz & Hulse,* attorneys], for the plaintiff.

*Charles W. Atwater* of counsel [*Atwater & Clarke,* attorneys], for the defendants.

MARTIN, J. The plaintiff was the owner of a valuable collection of paintings and other objects of art. In December, 1922, he

made an arrangement with the defendant corporation, engaged in the business, as its name implies, of selling works of art, to sell his collection on a ten per cent commission basis. The articles to be offered for sale were delivered to the defendant corporation's place of business in January, 1923. The plaintiff now demands their return, or if sold, that defendant account for the proceeds of the sale.

The particular items for which the defendant has failed to account, except to the extent of $4,500, are as follows: (1) " Christ taken down from the Cross," Van Dyck, $22,000; (2) " Madonna and Child," Giampetrini, $8,000; " Madonna," Massys, $4,500; (3) " Bathing Nymph," Diaz, $500; (4) " Wooden Sculpture," $500; (5) " Ante-Pendium," $200; total $35,800; less ten per cent commission of $3,580, or $32,220, less amount received on account of pictures sold to Fisher of $4,500, leaving $27,720, alleged to be due plaintiff.

In June, 1923, the plaintiff went to Sweden. While absent, the " Van Dyck " was delivered on approval to one Vincent D. Cliff of Detroit. The defendant corporation through its officers or employees agreed that if Mr. Cliff kept the " Van Dyck " it would take in part payment therefor a picture known as " Doubting Thomas," and a Damascus rug, which had been sold and delivered to Mr. Cliff in October, 1922. The " Doubting Thomas " and the rug were not the property of the plaintiff, but had belonged to another consignor and in the exchange were to be valued at $14,225 and $2,500 respectively. It is important to note that they appear to have been delivered to the defendant corporation by Mr. Cliff before October 12, 1923, about a year prior to the death of Mr. Halow.

The plaintiff returned to this country in October, 1923, and was then told by Mr. Halow that Mr. Cliff had the " Van Dyck." Nothing appears to have been said about the price or the terms of the sale. The picture remained with Mr. Cliff down to the time of the trial.

The plaintiff again went abroad in July, 1924, and on the twenty-fourth of that month Mr. Halow was taken ill. He was operated on two or three days later. Mrs. Halow, a director and treasurer of the company since July, 1922, was given to understand after the operation that her husband would probably not live more than thirty days, whereupon she sent for her brother, Mr. Bradley, to help carry on the business. Mrs. Halow then came into full control of the company; 795 shares out of 845 shares of the stock of the company were transferred to her. In addition she was a large creditor. At the time of the trial she said the company owed her $11,000.

Confronted with the condition brought about by the serious illness of her husband, she wired Mr. Cliff to come to her home at Great Neck, L. I., for a conference. He came in August, 1924, and there were present at the conference Mr. Cliff, Mrs. Halow, Mr. Bradley and the bookkeeper, a Miss Aufort.

The respective claims of Mr. Cliff and the Consignment Arts, Inc., were talked over, and the account adjusted. The statement which was made up at that time is in the record. It shows that there had been an open account between Mr. Cliff and the Consignment Arts, Inc., since 1922; that payments and credits due Mr. Cliff amounted to $59,496.28 and by the account he is debited to the extent of $63,078.78, leaving $3,582.50 due the Consignment Arts, Inc.

A letter was signed by both Mr. Cliff and the defendant corporation settling this account, with the exception of a claim against the Consignment Arts, Inc., on account of certain diamonds delivered by Mr. Cliff's wife and daughter to Mr. Halow. In the account, next to the last item, Mr. Cliff is charged $22,000 for the " Van Dyck " and he is credited with the " Doubting Thomas " at $14,225 and the rug at $2,500. This is in accordance with his letter of October 12, 1923.

Mr. Cliff testified that he had purchased the " Van Dyck." The court has found that Mr. Cliff bought this picture and that the Consignment Arts, Inc., received in part payment the " Doubting Thomas," and the Damascus rug.

The plaintiff returned to this country in 1924 and he then learned of the death of Mr. Halow on September 22, 1924. He saw Mrs. Halow in the latter part of September or the first part of October when she told him that Mr. Halow had died. On inquiry of her about the " Van Dyck " she told him that it had been sold, and on asking her the price she said she did not know it; that she would have to await the arrival of her brother in New York, in order to ascertain the details. The only information that the plaintiff seems to have thereafter received from Mr. Bradley was that the picture was sold to Mr. Cliff and that he had paid part of the price but not the whole. The record does not disclose what became of the Damascus rug. Mrs. Halow said that she understood that the " Doubting Thomas " valued at $14,225 was returned to the owner.

It is apparent that the defendant corporation used the plaintiff's $22,000 " Van Dyck " to settle the open account of Mr. Cliff; that the defendant paid the plaintiff no cash whatever; that the " Doubting Thomas," valued at $14,225, was eventually returned to the owner and that the rug, valued at $2,500, has not been

accounted for. In other words, $22,000 worth of plaintiff's property has been converted to the use of the defendant corporation.

The Special Term found that the plaintiff is entitled to an accounting from the Consignment Arts, Inc., for the " Doubting Thomas " and the Damascus rug, and that both the defendants should be charged with $5,275 less ten per cent, being the amount due after deducting from the price of the " Van Dyck " the value of the " Doubting Thomas " and the Damascus rug.

The plaintiff contends that the Consignment Arts, Inc., and its treasurer, in making this settlement and using the " Van Dyck " to settle the account of the Consignment Arts, Inc., violated their trust and that both of these defendants should be charged with the price of the " Van Dyck," $22,000. We believe that the plaintiff is entitled to an accounting from the defendant corporation for the whole $22,000, less ten per cent.

Mr. Cliff had other transactions with the defendant corporation so that the $5,275 was not paid over in cash. The defendant received credit for that amount in its account with Mr. Cliff. The defendant claimed that it had an agreement with the plaintiff that he should receive $8,000 upon the sale of this painting and that the defendant corporation should be entitled to retain any excess. The court very properly rejected that claim.

The defendant was given the Van Dyck to sell, not to exchange for another picture of doubtful value or for a rug. No permission was given by plaintiff to apply the amount received to the indebtedness due by the defendant corporation to Mr. Cliff. The direction was to sell, deduct the commission and pay over the amount remaining from the sale price of $22,000 less ten per cent to the plaintiff.

With reference to the other pictures, it appears that in the spring of 1924, before the plaintiff went to Europe, he had a talk with Mr. Halow and fixed the price at which two were to be sold, $8,000 for the Giampetrini and $4,500 for the Massys. Mr. Donlan, acting for the Consignment Arts, Inc., sold these pictures in May, 1924, to Frederick J. Fisher of Detroit. The price for the Giampetrini was $8,000 and the Massys $4,500.

Three other pictures were delivered to Fisher at the same time, five in all. The total price was $28,500 and Mr. Donlan brought back a check for $15,000 as a payment on account. The balance was paid just before Mr. Halow's death. After this sale and the fixing of the price to Fisher, the plaintiff had another conversation with Mr. Halow, in which Mr. Halow told the plaintiff that the buyer of these pictures was a Mr. Fisher of Detroit who did not want to pay the price that had been fixed, but would pay $8,000 for the two and Mr. Halow very strongly urged the plaintiff to

accept that proposal. Finally plaintiff stated that he would take the $8,000 and he was advanced $4,500 on account so that he could go to Sweden.

The defendant's ledger credits Mr. Beskow with $7,200 for these pictures; that is, $8,000 less ten per cent. The court has found that they were actually sold to Fisher for $12,500, and very properly directs that the Consignment Arts, Inc., be charged with the difference between $12,500, less ten per cent, and $7,200, the amount for which the Consignment Arts, Inc., has already given Beskow credit, or $4,050.

The plaintiff also had in his collection a picture by Diaz, entitled the " Bathing Nymph " which was delivered to the Consignment Arts, Inc. When he returned from Europe after Mr. Halow's death in 1924, the picture was not in the shop of the Consignment Arts, Inc., and a month before the trial the plaintiff saw the picture in the house of Conrad Smith in Detroit. Nothing was ever paid by the Consignment Arts, Inc., for this picture. The books of the Consignment Arts, Inc., show that Mr. Smith was charged for merchandise in September, 1923, in the sum of $600. The defendant gave no proof respecting this picture. The court rightly directed that the Consignment Arts, Inc., should account to the plaintiff for this picture. It was the contention of the plaintiff that the account of both of the defendants should have been charged with $600, the price of the picture.

There was also delivered by the plaintiff to the Consignment Arts, Inc., a wooden sculpture called " Virgin and Angels." It was placed in Mr. Cliff's house and it was there at the time of the trial. The plaintiff was never paid anything for this sculpture. It is referred to in Mr. Cliff's letter as " Madonna and Angels " and described as being of wood. The letter shows that Mr. Cliff paid $500 to the defendant corporation for it. The defendants gave no evidence in connection with this sculpture. The court found that the Consignment Arts, Inc., should account to the plaintiff either for the sculpture or the proceeds of the sale.

The " Ante-Pendium," which is a silk which is placed before an altar in a church, was delivered to the Consignment Arts, Inc., and was in its possession when the plaintiff went to Europe in the spring of 1924, but it was not there when he returned. It has never been returned nor has the plaintiff received any pay therefor. The court has found that the Consignment Arts, Inc., should account to the plaintiff either for the " Ante-Pendium " or for the proceeds of its sale. The consigned price of this article as shown by the catalogue was $200.

The plaintiff argues that the defendant Hulda B. Halow should

be held personally liable for the proceeds of the sale of the above-mentioned art objects upon the ground that she was elected a member of the board of directors and treasurer in July, 1922; that she signed the checks of the company; that Mr. Halow, the president could not draw on the bank account without her signature, and that after December, 1923, she had the sole right to sign the checks. In August or September, 1924, there was transferred to her 750 out of the 845 shares of the outstanding stock of the corporation. Returns were made to her from the books and she knew the financial standing of the company. She signed the tax returns as treasurer of the company. She was at the place of business usually once or twice a week, and checked up the books with the bookkeeper twice a month. Mr. Halow, Mrs. Halow, Miss White, an employee, and the bookkeeper met twice a month for two hours or so to make up the books, and the books were actually written up in Mrs. Halow's presence. She kept the check book and Miss White kept the deposit book and reported to Mrs. Halow the amount of deposits and gave her the deposit slips. Each time Mrs. Halow came into the place of business Miss White would go over with her what had happened to keep her well informed.

We are of the opinion that Mrs. Halow is not personally liable for any of these items. All of these matters were disposed of by the corporation, the " Van Dyck " having been left for approval with Vincent D. Cliff at least a year before Mr. Halow died. We have no right upon the evidence submitted to ignore the corporate entity and charge an officer or employee with personal liability where the evidence shows nothing more than employment and services as such employee.

The extent of the defendant's liability has been clearly indicated, but it will be necessary to present the evidence to a referee so that there may be a full accounting.

The judgment should be modified as indicated above, and as so modified affirmed, with costs to the plaintiff.

DOWLING, P. J., MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Judgment modified as indicated in opinion and as so modified affirmed, with costs to the plaintiff. Settle order on notice. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.