MORTIMER B. BURNSIDE & CO., INC., Appellant, *v.* HAVENER SECURITIES CORP. et al., Respondents.

First Department, May 10, 1966.

*Milton Davidoff* of counsel (*Stevason, Dukas & Moussouri,* attorneys), for appellant.

*Gordon Zimmerman* of counsel (*Gordon, Brady, Caffrey & Keller,* attorneys), for respondents.

*Per Curiam.* In an action for breach of an alleged oral agreement whereby defendants were to assign and deliver common stock purchase warrants to plaintiff, the defendants have been awarded summary judgment dismissing the complaint.

The alleged oral agreement was made January 9, 1965. Plaintiff alleges it to be one whereby defendants agreed to assign to plaintiff one third of the 25,000 common stock purchase warrants issued to defendant Havener Securities Corp. by Ormont Drug & Chemical Co., Inc., in the event plaintiff purchased Ormont stock from one Friedman. On February 12, 1965 plaintiff entered into a written agreement with Friedman to purchase 10,000 shares of common stock of Ormont with an option to purchase 20,170 additional shares. Plaintiff alleges it consummated the purchase of the Friedman stock and thereby became entitled to the said warrants.

The issue presented is whether the contract is within the purview of the Statute of Frauds. If it is, the plaintiff may not recover and defendants would be entitled to summary judgment.

The contract for the sale of a security comes within the Statute of Frauds and therefore to be enforcible it must be in writing. (Uniform Commercial Code, § 8-319; see *R. & L. Co.* v. *Metz,* 175 App. Div. 276, affd. 219 N. Y. 556.)

The first question that arises is whether this transaction contemplates a " sale ". The answer is furnished by section 2-106 of the Uniform Commercial Code which provides that " A sale consists in the passing of title from the seller to the buyer for a price ". The agreement here alleged does call for the transfer of title to securities in the nature of warrants. The transaction does not contemplate a gift or a pledge but rather the transfer of the securities for a consideration. Consequently, it would ------ within the definition of a " sale ", provided, however, that

the transfer is for a " price ". That brings us to the second question as to whether the contemplated transfer of the warrants was for a " price ". The answer to that question is furnished by section 2-304 of the Uniform Commercial Code which states that " The price can be made payable in money or otherwise ". The word " otherwise " is not limited in any way and therefore it could include any consideration sufficient to support a contract. The purchase of the stock from Friedman, at defendants' request, constituted the consideration for the agreement to transfer the warrants. It does not matter that the purchase was to be made from a third party. It is the act of purchase that defendants requested in exchange for their promise to deliver the warrants and the performance of that act constitutes the " price " within the meaning of the statute. Thus, there is here alleged a transaction contemplating a sale of securities which to be enforcible must be in writing.

The contract alleged is unilateral in nature and in order to be binding upon the defendants the plaintiff must have completed the performance required of it. But such performance does not bring it within the exception excusing the failure to have a writing. To bring it within that exception the act of performance must be " unequivocally referable " to the promise alleged to have been made. (*Sleeth* v. *Sampson*, 237 N. Y. 69; *Burns* v. *McCormick*, 233 N. Y. 230.) If this were not so, any act may be claimed to be performance in reliance on any promise the actor chooses to assert against anyone. The rule that performance must be unequivocally referable to the alleged promise implements and serves the purpose of the Statute of Frauds. A writing is the only other statutory protection against frauds. The purchase of the stock from Friedman could have been made for any number of reasons quite apart from any promise by the defendants. It is not " unequivocally referable " to a promise to deliver the warrants. (See *Bright Radio Labs.* v. *Coastal Commercial Corp.*, 4 A D 2d 491, 494, affd. 4 N Y 2d 1021.) The alleged agreement with the defendants therefore comes within the Statute of Frauds, is not enforcible and it was proper to grant summary judgment dismissing the complaint.

There is an additional basis for affirmance as to the individual defendant Paul W. Havener, president of the corporate defendant. An officer of a corporation is not personally liable for the obligations of the corporation. (*Beskow* v. *Halow*, 223 App. Div. 434, 439, affd. 251 N. Y. 514.)

The order should be affirmed, with costs and disbursements to defendants-respondents.

STEUER, J. (dissenting). The complaint alleges that defendant was the owner of stock purchase warrants for the common stock of Ormont Drug & Chemical Company at the price of $3 a share. One Leonard Friedman owned some 30,000 shares of the Ormont Company. Plaintiff claims that on January 9, 1965, defendant advised it of the shares held by Friedman and promised that if plaintiff purchased these shares from Friedman defendant would assign to plaintiff one third of the purchase warrants owned by it. Plaintiff thereupon purchased the Friedman shares from him. Defendant refused to deliver the warrants. Defendant having established that the alleged agreement was oral, pleaded the Statute of Frauds and, on that plea, has obtained summary judgment.

Clearly if it were not for the Statute of Frauds, an issue of fact would exist precluding any right to summary judgment. The issue on this appeal is, therefore, whether the statute has any application to the situation here presented. For two distinct and obvious reasons it does not. The first reason is that the applicable statute (Uniform Commercial Code, § 8-319) applies only to "A contract for the sale of securities." While defendant is correct in its contention that the commodity here involved comes within the definition of "securities," the transaction described is not a sale. Not every agreement to deliver or transfer property is a sale or a contract to sell (1 Williston, Sales [Rev. ed.], § 9b). The definition of a "sale" under the Uniform Sales Act was an agreement whereby the seller transfers property in goods for a consideration called the price (Personal Property Law, § 82). Price was defined as "payable in any personal property" (Personal Property Law, § 90, subd. 2). This latter definition is now changed in phraseology: "The price can be made payable in money or otherwise. If it is payable in whole or in part in goods each party is a seller of the goods which he is to transfer" (Uniform Commercial Code, § 2-304, subd. [1]). A succeeding paragraph provides for the situation where the price is an interest in realty. The sum total of these definitions is an effort to put into restrictive and definitive language the common parlance of selling and buying. A sale takes place when somebody pays something, money or goods, for something else (cf. *Matter of Young* v. *Gerosa,* 11 A D 2d 67). The transaction here, instead of being a sale resembles the classic law school unilateral contract case where A promises to give B, a student, a specified gold watch if he abstains from alcohol during his school term. While it is an agreement to deliver a watch under certain conditions, by no stretch of language can it be called a sale of the watch.

But even if it be construed that the words "or otherwise" in section 2-304 of the Uniform Commercial Code include the doing or refraining from performance of an act as within what may constitute "price," the Statute of Frauds still does not constitute a defense, because then the performance of that act constitutes payment of the price, and such payment takes the agreement out of the statute (Uniform Commercial Code, § 8-319, subd. [b]). Clearly here the plaintiff has adduced sufficient proof to raise an issue as to the following facts: The defendant, in order to increase the value of its warrants, desired to have certain large blocks of stock off the market; it therefore offered the plaintiff a portion of the warrants if plaintiff would buy a particular block; if plaintiff bought the stock, defendant's object was accomplished and the contract was made. As in all unilateral contracts, the acceptance of the offer and the performance of the consideration by the offeree consisted of the identical act.

The majority opinion seeks to get off the horns of this dilemma by reasoning which, in my opinion, only serves to affix them more firmly. The argument is based on the indisputable premise that it is not the performance of the requested act which constitutes acceptance of a unilateral contract but only such performance with an intent to comply with the offer. Whether the plaintiff bought the stock with the requisite intent or not is a question of fact precluding summary judgment. If plaintiff did, it performed fully and the statute does not apply; if plaintiff did not, then there was no "price" as the majority defines that term, and hence no sale, and the statute does not apply. It is true that in the second contingency plaintiff could not recover but, in either event, the statute has no application and a pure question of fact remains.

I agree that there is no cause of action alleged against the individual defendant and that, as to him, judgment should stand.

The judgment should be modified by striking the provisions for judgment in favor of the corporate defendant and the motion as to it denied on the law, and the judgment as so modified, affirmed, with costs to the appellant.

BOTEIN, P. J., RABIN and McNALLY, JJ., concur in *Per Curiam* opinion; STEUER, J., dissents in opinion.

Order, entered on December 9, 1965, affirmed, with $50 costs and disbursements to the respondents.