Eric SANDLER, Plaintiff,

v.

MARCONI CIRCUIT TECHNOLOGY CORP.; Plessey Semiconductors Ltd.; GEC, plc of England; and Doug J. Dunn, Defendants.

No. 92 CV 0682 (TCP).

United States District Court,
E.D. New York.

Feb. 16, 1993.

Guttman & Guttman by Bruce Howard Guttman, Melville, NY, for plaintiff.

Seward & Kissel by Dale Christensen, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendants Marconi Circuit Technology Corporation ("Marconi"), Plessey Semiconductors Ltd. ("Plessey"), GEC, plc of England ("GEC"), and Doug J. Dunn move to dismiss plaintiff Eric Sandler's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). For the reasons set forth below, this motion is granted.

## BACKGROUND

Plaintiff was employed by Marconi, a subsidiary of Plessey and GEC, from April 4, 1987, through April 5, 1991. In the wake of his termination by Marconi, plaintiff initiated this suit in federal district court pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.

In Count I of the Amended Complaint, plaintiff claims defendants violated ERISA by first representing to plaintiff that he would be entitled to retirement benefits after three years of service with the company, and then, after plaintiff was terminated, representing to him that he was not fully vested because he had not worked for three years after enrollment in the plan. Amended Complaint ¶¶ 26, 49. Plaintiff further alleges that he was not furnished with a written copy of the plan until two months after his termination. Amended Complaint ¶ 26.

In Count II, plaintiff alleges a breach of a stock option agreement. Plaintiff claims he is entitled to monetary damages, notwithstanding the stock option agreement's clear statement that the option to purchase shares

may only be exercised during employment by GEC or an affiliated company (Amended Complaint, Ex. A), because he was allegedly advised at the time of his termination that he would be allowed to exercise his stock option after his termination. Amended Complaint ¶¶ 62, 75.

In Count III, plaintiff claims he was slandered based upon defendant Doug Dunn's statement that "Eric Sandler and the management of Marconi screwed up the company and we had to let them go." Amended Complaint ¶ 78.

Count IV sets forth a claim of employment discrimination based upon religion and nationality, founded upon defendant Dunn's statement that "we were able to kill two birds with one stone, when we got rid of Sandler, a Jew and a Spic." Amended Complaint ¶ 85.

DISCUSSION

A. *Count I*

■ Defendants move to dismiss the ERISA claim in plaintiff's Amended Complaint (Count I) on the ground that claims based on oral misrepresentations concerning a retirement plan are barred by ERISA. This Court agrees and finds that Count I must be dismissed in its entirety as to all of the defendants.

In June 1989, Marconi advised plaintiff that he was eligible to participate in a retirement plan effective July 19, 1989. Plaintiff alleges that he was told that the plan would provide annual benefits commencing at age sixty in the amount of $100,000 per year for ten years with full vesting *after three years of service* with Marconi. Amended Complaint ¶¶ 25, 37–38, 49. Following plaintiff's termination, however, he received a written copy of the plan provisions and learned that, contrary to the terms disclosed orally, full vesting would not occur until *after three years of plan participation*. Plf.'s Ex. A, Supplemental Retirement Agreement, ¶ 4. Accordingly, plaintiff was not entitled to retirement or death benefits under the retirement plan. Amended Complaint ¶¶ 26–27.

■ Plaintiff charges that he relied to his detriment on the oral misrepresentations made to him concerning the company's re-

tirement plan. Amended Complaint ¶¶ 45–46. As such, plaintiff's ERISA claim appears to be for promissory estoppel or fraud or breach of contract. Common law claims of promissory estoppel, breach of contract, or fraud, however, are pre-empted under ERISA. 29 U.S.C. § 1144(a) (1988) (ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (ERISA pre-empts state law claims).

■ Moreover, oral agreements or modifications to a retirement plan are insufficient to support a claim for recovery under ERISA. *See Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989) (affirming dismissal under Fed.R.Civ.P. 12(b)(6) because "ERISA does not recognize the validity of an oral modification of a pension plan"), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1297 (5th Cir.1989) ("oral agreement cannot be the basis of a cause of action under ERISA" because "ERISA expressly requires that employee benefit plans be 'established and maintained pursuant to a written instrument'") (quoting 29 U.S.C. § 1102(a)(1)); *Musto v. American Gen. Corp.,* 861 F.2d 897, 909–10 (6th Cir.1988) ("Congress in passing ERISA did not intend that participants in employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under their plan"), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Straub v. Western Union Co.,* 851 F.2d 1262, 1265 (10th Cir.1988) ("no liability exists under ERISA for purported oral modifications of the terms of an employee benefit plan"); *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986) ("requirement that ERISA plans be 'maintained' in writing precludes oral modifications of the Plans; the common law doctrine of estoppel cannot be used to alter this result").

Indeed, courts in this Circuit have routinely rejected claims based upon oral promises which purport to vary the terms of a written ERISA plan. In *Smith v. Dunham-Bush*

*Inc.*, 959 F.2d 6 (2d Cir.1992), the Second Circuit Court of Appeals held that "ERISA explicitly provides, in section 402(a), that all agreements relating to pension benefits must be in writing." *Id.* at 10. In *Smith*, the plaintiff was a British national who claimed reliance on his employer's promise that he would receive a retirement benefits package comparable to what he would have received in the United Kingdom, rather than the lesser benefits provided for under the employee's written plan. *Id.* at 7.

The Second Circuit affirmed the District Court's dismissal of the plaintiff's claim, ruling that the claim for additional benefits pursuant to an oral promise was related to an employee benefit plan and therefore was preempted by ERISA. In its preemption analysis, the Court further noted that ERISA requires all agreements related to pension benefits to be in writing, the rationale being that a writing would prevent plan administrators from harming the actuarial soundness of the plan by contracting to pay benefits to persons not so entitled under the plan's express terms. *Id.* at 10. *See also Zydel v. Dresser Indus., Inc.*, 764 F.Supp. 277, 284–85 (W.D.N.Y.1991) (cause of action based upon oral modification of pension plan is barred by ERISA and promissory estoppel claim is preempted by ERISA); *Weingord v. Western Union World Comm., Inc.*, 1991 WL 90742 (S.D.N.Y.1991) (granting summary judgment in favor of defendant because claim based on promise that plaintiff would receive more severance pay than current written plan allowed is barred as a matter of law by ERISA); *Bakersky v. ITT*, 1990 WL 33149 (D.N.J.1990) ("ERISA's express mandate that employee benefit plans be established pursuant to written instruments and the weight of appellate authority compel the conclusion that precluding oral modification of ERISA plans represents the better reasoned approach"); *Moore v. Metropolitan Life Ins. Co.*, 1987 WL 16148 (S.D.N.Y.1987) ("The Court concludes that it cannot create a federal common law right of estoppel in the manner suggested by plaintiffs because ERISA and the case law interpreting ERISA expressly decline to accept plaintiffs' estoppel theory" based upon "various oral representations made by defendant").

Plaintiff alleges in his Amended Complaint that, despite "reasonable attempts to obtain same", he did not receive a written copy or summary of the retirement plan until two months after his discharge. Amended Complaint ¶¶ 27, 47. Disclosure of a written summary and information regarding the plan's provisions is mandated under ERISA and plaintiff undoubtedly could have initiated an action to compel defendants to supply him with such a writing. *See* 29 U.S.C. § 1021(a) (1988). Plaintiff fails to point to any Second Circuit authority, however, that recognizes a cause of action for monetary relief on the basis of equitable estoppel under such circumstances.

Moreover, plaintiff's allegation with respect to the oral misrepresentations made which he asserts give rise to an equitable estoppel or fraud argument are insufficient. In the first place, it is clear that this is a nonparticipatory plan, i.e., the employer, not the plaintiff, made all contributions thereto and the employer's contributions of $7,500 annually to the plan on behalf of the plaintiff and other executive employees covered thereunder commenced on July 19, 1989. The alleged oral representation to the plaintiff was that the plan "was to provide" for "full vesting' following three years of service with the defendant corporation, Marconi" (Amended Complaint ¶ 25) and again "that plaintiff would be fully vested upon the completion of three years of service with the defendant Marconi Circuit Technology Corporation." Amended Complaint ¶ 49. These are truthful representations that the plan would be (future tense) vested upon completion of three years after its adoption. Had an officer of defendant Marconi stated that the plaintiff, having served more than three years as an employee, was fully vested upon the adoption of the plan, then plaintiff might have an argument in another jurisdiction which has recognized the equitable estoppel doctrine in this context.[1] But plaintiff makes

---

1. The fallacy in plaintiff's whole argument is borne out in Paragraph 10 of the "Supplemental Agreement" which provides that his employment was at will and that he could terminate without

no such allegation and, even if he did, it would not be sustained in this Circuit under the present authorities.

In light of the overwhelming body of case law refusing to allow oral modifications to written retirement plans and the foregoing analysis, it is clear that plaintiff's claim as set forth in Count I of the Amended Complaint is pre-empted and barred by ERISA. Accordingly, Count I is hereby dismissed as to all defendants.

### B. *Count II*

Defendants further argue that plaintiff's claim for breach of a stock option agreement is barred under New York law. As part of his employment compensation package at Marconi, plaintiff received an option to purchase GEC securities. Amended Complaint ¶ 28. Plaintiff alleges that, three days before his termination, defendant Doug Dunn, an officer of both Marconi and Plessey, told plaintiff that he would be permitted to exercise the option after termination of employment. Amended Complaint ¶¶ 31–32. When plaintiff attempted to exercise the option two months after his termination, however, he was notified by GEC that he was not permitted to do so under the written terms of the option agreement. Amended Complaint ¶¶ 66–67.

The written agreement clearly provides that the option to purchase securities may be exercised only while the participant is employed by GEC or a GEC affiliate or at the discretion of the GEC Board of Directors subject to their conditions. Amended Complaint, Ex. A, at 4. The agreement further provides that, if the participant ceases to be employed for any reason, he "shall not be entitled by way of compensation for loss of office or otherwise howsoever to any sum or benefit to compensate [him] for the loss of any rights under [the agreement]." *Id.* Plaintiff signed the Form of Acceptance, accepting the provisions of this agreement. *Id.* at 5.

Plaintiff's claim under the option agreement is barred by the Statute of Frauds,

New York Uniform Commercial Code Section 8–319. Section 8–319 provides:

> A contract for the sale of securities is not enforceable by way of action or defense unless
>
> > (a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price.

N.Y.U.C.C. § 8–319 (McKinney 1990).

A stock option agreement constitutes a contract for the sale of securities. *See, e.g., Mortimer B. Burnside & Co. v. Havener Secs. Corp.*, 25 A.D.2d 373, 374–75, 269 N.Y.S.2d 724, 726 (1st Dep't 1966) (agreement regarding common stock purchase warrants is a sale of securities under § 8–319). As such, plaintiff's claim is barred by the Statute of Frauds because an oral promise such as that alleged by plaintiff, giving him the right to exercise a stock option after discharge, is unenforceable absent a writing memorializing the promise. Here, the writing makes clear that the option may not be exercised after employment ceases. Notwithstanding any oral promise by defendants, plaintiff could not, as a matter of law, exercise the stock option in the absence of a writing signed by GEC. *See Gates v. BEA Assocs., Inc.*, 54 Fair Empl.Prac.Cas. 650, 656–57 (BNA), 1990 WL 180137 (S.D.N.Y. 1990) (claim for breach of stock bonus plan barred under § 8–319 due to absence of writing signed by party against whom enforcement is sought is sufficient to indicate a contract for the sale of a stated quantity of securities at a stated price).

Plaintiff points to the lapsed stock option agreement as evidence of an ambiguous or incomplete writing, but this is simply not sufficient to avoid the bar imposed by the Statute of Frauds. The stock option agreement clearly states that it lapses upon termination of employment absent the express approval of GEC's Board of Directors. Since

---

liability at any time, i.e., under his theory, he could have quit the day after the plan's adoption and received full benefits thereunder without

having contributed a dime's worth of money or labor.

268

plaintiff has failed to present any writing from the GEC Board of Directors demonstrating that the option has been extended or revived, plaintiff's claim is barred.

## C. *Count III*

Defendants contend that plaintiff's slander *per se* claim (Count III) is deficient on its face and must be dismissed. Count III of the Amended Complaint alleges a false and defamatory statement by defendant Doug Dunn that "Eric Sandler and the management of Marconi screwed up the company and we had to let them go." Amended Complaint § 78.

■ In assessing a claim of slander *per se*, the Court must construe the allegedly defamatory statement according to its plain meaning. Innuendo may not be employed to enlarge the meaning of the statement, thereby giving it a meaning that was not expressed by the words themselves. *Cole Fischer Rogow, Inc. v. Carl Ally, Inc.*, 29 A.D.2d 423, 429, 288 N.Y.S.2d 556, 562 (1st Dep't 1968), *aff'd*, 25 N.Y.2d 943, 252 N.E.2d 633, 305 N.Y.S.2d 154 (1969).

■ The threshold issue is whether the statement is an expression of fact or mere opinion. *Parks v. Steinbrenner*, 131 A.D.2d 60, 60, 520 N.Y.S.2d 374, 375 (1st Dep't 1987). A mere expression of dissatisfaction with a person's professional performance is not defamatory *per se*. *See Tufano v. Schwartz*, 95 A.D.2d 852, 852, 464 N.Y.S.2d 211, 212 (2d Dep't 1983); *see also Aronson v. Wiersma*, 65 N.Y.2d 592, 593–94, 483 N.E.2d 1138, 1139, 493 N.Y.S.2d 1006, 1008 (1985) (statement by plaintiff's supervisor that "I can't get her to do anything", "[t]he person isn't doing their job", "I've got to let her go" not slander *per se* because it does not, on its face, defame plaintiff in her profession). If the statement is deemed to be pure opinion or opinion accompanied by a recitation of facts upon which it is purportedly based, the statement is given full constitutional protection no matter how false or defamatory. *See Parks*, 131 A.D.2d at 63, 520 N.Y.S.2d at 377–78

(published written statement that plaintiff umpire is "not capable", "doesn't measure up" to other umpires on his crew, "misjudge[d]" several plays, and a "scab" not actionable under New York law); *see also Steinhilber v. Alphonse*, 68 N.Y.2d 283, 287, 501 N.E.2d 550, 555, 508 N.Y.S.2d 901, 907 (1986) (statement that candidate for union post was a "scab", lacking in "brains", "talent, ambition and initiative" mere subjective opinion and therefore not actionable as a matter of law). Like the statements in *Parks* and *Steinhilber*, the statement by Dunn that plaintiff "screwed up" and therefore had to be "let ... go"[2] is nothing more than an expression of opinion and, as such, does not amount to defamation under New York law.

■ Finally, defendant Dunn's allegedly defamatory statement about plaintiff does not amount to slander under New York law because plaintiff has failed to plead the pecuniary injuries directly caused by the statement. Special damages must be pled and proved in order to state a cause of action for slander, whenever the slander alleged is not slander *per se*. *Noble v. Creative Tech. Servs., Inc.*, 126 A.D.2d 611, 612–13, 511 N.Y.S.2d 51, 52–53 (2d Dep't 1987). As in *Aronson*, the instant case does not state a claim for slander *per se* because Dunn's statement, at most, was an expression of dissatisfaction with plaintiff's professional performance.

■ Moreover, plaintiff's claim for slander must be dismissed because plaintiff has failed to plead special damages. The Amended Complaint charges that plaintiff suffered injury to his "good name and reputation as an Electrical Engineer and has suffered loss of substantial business opportunities, great pain and mental anguish and has been held up to ridicule and contempt by his friends, acquaintances and the public all to his damage in the sum of [$5,000,000]." Amended Complaint ¶ 83. These conclusory allegations of damages in round figures do

---

**2.** The fact that plaintiff was "let ... go" by Marconi is undisputed. Since, as a matter of law, a statement that is true may not be defamatory, the only part of Dunn's statement that could

conceivably be defamatory is that the former management of Marconi, including plaintiff, had to be discharged because they "screwed up".

not satisfy the rigorous pleading requirements for special damages. *See Matherson v. Marchello,* 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1001 (2d Dep't 1984). Nowhere does plaintiff allege pecuniary damages caused directly by the alleged defamation and, therefore, Count III must be dismissed.

### D. *Count IV*

Defendants also contend that plaintiff's employment discrimination claim (Count IV) is deficient on its face and must be dismissed. This Court agrees and hereby dismisses Count IV of the Amended Complaint.

Count IV alleging "Employment Discrimination" based upon religious and national origin fails to specify under what statute it is brought, but it is clear that plaintiff has not and may no longer exhaust his administrative remedies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* because he has failed to commence the requisite administrative proceeding within 300 days of the discriminatory act—here, the April 2, 1991, discharge. 5 U.S.C. §§ 701, 706(b) (1988); 42 U.S.C. § 2000e–5(f) (1988).

Indeed, the only possible federal ground upon which this Court might exercise jurisdiction over Count IV would be 42 U.S.C. § 1981, as amended November 1, 1991. However, several considerations bar this Court from so exercising its jurisdiction. First, prior to its amendment, § 1981 was not applied to employment terminations and the amended § 1981 is not retroactive in its application. Second, even if § 1981 is retroactive, it is not applicable to the instant case because: (1) plaintiff does not allege what his national or religious origin is; (2) § 1981 has never been applied to alleged religious discrimination; and (3) the single post-discharge remark alleged in the Amended Complaint is insufficient to sustain a claim against a corporate employee.

### CONCLUSION

In light of the foregoing, this Court hereby dismisses the Amended Complaint for failure to state a federal claim in any court and for lack of federal subject matter jurisdiction. Counts III and IV might state a State cause of action, but because the federal claims have been dismissed, this Court may not exercise pendent jurisdiction over any remaining State claims.

SO ORDERED. Submit judgment on notice.