Lucille A. CONROY, Plaintiff,

v.

**ANCHOR SAVINGS BANK, FSB, Defendant.**

No. 91 CV 0319 (SJ).

United States District Court, E.D. New York.

Jan. 13, 1993.

Gail Boyd, Boyd & Cave, P.C., Brooklyn, NY, for plaintiff.

Kenneth J. Kelly, Epstein Becker & Green, P.C., New York City, for defendant.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

Plaintiff Lucille Conroy ("Conroy") brings this action under the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.* ("ADEA"). Defendant now moves for summary judgment under Fed.R.Civ.P. 56 and for sanctions under Fed.R.Civ.P. 56(g). For the reasons set forth below, Defendant's motion for summary judgment is granted and the motion for sanctions is denied.

## I. BACKGROUND

Conroy began her employment with Anchor on January 5, 1970 as a key punch operator in the Compubank Department. In 1976, she became the Senior Clerk of the Archives Department, and in 1982, Supervisor of the Records Management Depart-

ment. Her final promotion to Senior Supervisor of the Records Management Department occurred in 1986.

The Records Management Department processed and stored the raw data generated by the Bank's branches in Long Island, New Jersey, Florida, and Georgia. After the records were processed into microfilm and microfiche, the Records Management Department distributed them to the branches or sent them to Albion, New York, for long-term storage.

When Conroy began working at the Records Management Department in 1986, the department headquarters were located in Bay Ridge, Brooklyn. In October 1987, as part of an intensive effort to diminish expenses, Anchor relocated the majority of the records management functions, including permanent storage, to a new records center in Albion, New York. This relocation required that ten positions be transferred from Bay Ridge to Albion. The Bay Ridge office, thereafter consisting of three full-time employees, remained as the clearing center and was responsible for the verification of all microfiche and microfilm. This office checked the accuracy of the processed information and ultimately forwarded the information to Albion for long-term storage. Anchor retained the Bay Ridge office because of its proximity to Anchor's computer center in Wayne, New Jersey.

The following employees remained at the Bay Ridge office: Conroy, age 56, Senior Supervisor; Arlene Wilson, age 56, Department Specialist; and Guyatri Kissoon, age 34, Department Clerk. Conroy was responsible for performing the aforementioned duties as well as supervising the work of Ms. Wilson and Ms. Kissoon.[1] Wilson and Kissoon checked the accuracy of the information on the microfilm and microfiche by comparing it with the original raw data of Anchor's departments. Afterwards, they distributed the processed information to their respective departments or to Albion. Kissoon, however, also prepared statistical computer reports and the typewritten work for the department. The Bay Ridge Rec-

ords Management Department answered to Donald Cowan of the Albion office.

In late 1989, Robert Moore, the Vice President of Security for Anchor, in accordance with Anchor's plan to diminish expenses, requested a report from Cowan regarding the cost-effectiveness of transferring the Bay Ridge functions to Albion. Cowan submitted a proposal, dated January 19, 1990, recommending that Anchor transfer Bay Ridge branch of the Records Management Department to Albion to eliminate the cost of overhead in the Bay Ridge office and the duplication of certain verification duties in both offices. Cowan also suggested that Conroy, Wilson, and Kissoon be transferred to Albion to continue to perform their assigned duties. This proposal specifically stated that Conroy play a supervisory role at Albion. Additionally, the report included an organizational chart of the proposed consolidated office in Albion that listed Conroy as well as her subordinates in their present position. Cowan also recommended that the transfer take place in the middle of March of 1990.

Upon reviewing the report, Moore decided to implement Cowan's proposal of consolidating the entire Records Management Department in Albion. He proceeded to make a written recommendation of the department transfer to his immediate supervisor, Patricia Dawley, Executive Vice President and Secretary of Anchor, again emphasizing the goal of cost-effectiveness. Dawley soon approved said recommendation.

Moore then contacted John Coughlin, First Vice President, Human Resources, and Sharon Taylor, Assistant Vice President, regarding the announcement and implementation of the consolidation. Anchor implemented the following policy on relocating a position or a department. First, the Bank would offer the employee a transfer within the same position. Second, the Bank would offer the employee any other available positions for which the employee was qualified. Third, if no positions were available or the employee did not accept the

---

1. Plaintiff's salary was $29,044.60 per annum.

Ms. Kissoon's salary was $15,600 per annum.

open positions, Anchor would offer layoff with severance pay. Severance benefits consisted of one week's pay for each year of service.

Pursuant to Anchor's relocation policy, Coughlin, Taylor, and Alpert proceeded to review the personnel files of Conroy, Wilson, and Kissoon to determine if they were qualified for any available positions at Anchor. At that time, two types of positions were available: Department Specialist in the Retail Banking Department in Manhattan and Teller at the Bay Ridge branch.[2] The Department Specialist position required personal computer experience, specifically knowledge of Data Base III, Lotus 1–2–3 and Multi Mate software as well as excellent typing skills. The Teller position required no special skills.

Kissoon's file indicated that she had completed short computer courses at the American Institute of Banking, Introduction to IBM PC/DOS and Introduction to Lotus 1–2–3. In addition, Kissoon had regularly worked with a personal computer as a Department Clerk in the Records Management Department. Kissoon's file also noted that she was capable of typing 50 words per minute. The personnel files of Conroy and Wilson reflected no personal computer experience or typing skills. Anchor decided to offer Conroy and Wilson the following alternatives to layoff with severance: transfers to Albion where they would retain their present position and Teller positions in Bay Ridge. Anchor would offer Kissoon a similar transfer to Albion and the Department Specialist position.

Subsequently, on March 16, 1990, Moore and Alpert met with the three employees, beginning with Conroy, to inform them of the department transfer and discuss their alternatives. Moore informed Conroy that Anchor was transferring her department to Albion. First, he offered her a transfer to Albion at her current salary and grade level. Moore also offered Conroy $2,500 to assist her with her moving expenses. Conroy immediately refused this offer. Moore also offered Conroy the position of Teller

at the Bay Ridge location. The salary of Teller position was $150 per week less than Conroy's current salary because it fell within a lower grade. Conroy also declined this offer. Moore then explained to Conroy that the final alternative was layoff effective immediately with 20 weeks severance pay. Conroy accepted this option.

A representative from the Employee Benefits Department, Kenneth Cummings, soon arrived at the meeting to provide Conroy with information regarding her retirement benefits. At the end of the meeting, Conroy refused to sign a "Separation from Employment Report" which listed the matters discussed during the meeting. Later that day, Alpert annexed to said document another report entitled "Exit Interview" discussing the sequence of events during the meeting. Conroy's final day of work was March 16, 1990.

Moore and Alpert then met with Wilson to discuss the department transfer. They offered Wilson a transfer with a relocation benefit. She was also offered a Teller position at her same salary but a lower grade level. Wilson opted for layoff with severance money. The last meeting took place with Kissoon. Moore and Alpert offered her a Department Specialist position in a Manhattan office at the same salary which Kissoon immediately accepted.

## II. PRIOR PROCEEDINGS

On March 22, 1990, Conroy filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that her termination was improper because Anchor's failure to offer her the position of Department Specialist constituted discrimination on the basis of age. The EEOC issued a Determination on June 21, 1990 stating that the evidence obtained during the investigation did not establish a violation of the statute. The EEOC found that Anchor did not terminate Conroy after deciding to transfer her department. Rather, Conroy opted for layoff with severance pay after Anchor gave her three options in accordance with the policy for other depart-

---

2.  The Department Specialist position had a salary of approximately $15,600 per annum. The

Teller position had a salary of $21,244.60 per annum.

ment relocations. Moreover, the individual with whom Conroy was comparing herself in terms of disparate treatment was a subordinate who was offered a non-supervisory position similar to a position she herself rejected. The EEOC also stated that the evidence showed that other employees who had been similarly affected by departmental relocations included people both in and out of the protected age group.

Conroy requested a review of the Determination by the Commission's Determination Review Program in Washington, D.C. This agency issued a Determination of Review and Dismissal of the ADEA charge on September, 13, 1990 affirming the determination originally rendered by their field office. After exhausting her administrative remedies, Conroy commenced this action in November, 1990. Conroy alleges that Anchor discriminated against her on the basis of age when they offered the position of Department Specialist to Kissoon because she claims that she possessed the same skills as Kissoon. Alternatively, Conroy claims that positions were available in the Payroll Department two weeks before the layoff which Anchor should have given her since Anchor knew of the eventual transfer of her department.

## II. ANALYSIS

### A. Summary Judgment

A court may grant summary judgment only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c); *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991); *Binder v. Long Island Lighting Company,* 933 F.2d 187, 191 (2d Cir.1991). As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Bay,* 936 F.2d at 116 (*citing Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988)). Where the nonmoving party will bear the burden of proof at trial, however, "Rule 56

permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay,* 936 F.2d at 116 (*citing Celotex v. Caltrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier of fact could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate. *Bay,* 936 F.2d at 116 (*citing Binder,* 933 F.2d at 191); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### B. Burdens and Order of Proof

■ ADEA provides that it will be unlawful for an employee "to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a). The statute protects employees between the ages of forty and seventy. In an age discrimination case, courts have applied the burden shifting three-step analysis for Title VII cases set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), which also applies to ADEA actions. *Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991). Under this test, plaintiff has the initial burden of proof to establish a prima facie case of unlawful discrimination. If that burden is met, the defendant then has the burden of articulating a legitimate, nondiscriminatory reason for its action in rejecting plaintiff. Should defendant meet this burden, then plaintiff, upon whom the ultimate burden of persuasion rests, must show that the proffered reasons were not defendant's true reason and that age was a factor in the employer's decision not to hire him. *Taggart v. Time, Inc.* 924 F.2d at 46; *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 802–804, 93 S.Ct. at 1825.

■ The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination. *LaGrant v. Gulf and Western Mfg. Co., Inc.,* 748 F.2d 1087, 1090 (6th Cir.1984). To make a prima facie case of age discrimination, plaintiff must show that (1) she belongs to the protected age group, (2) she was qualified for the position sought, (3) she was not hired despite her qualifications, and (4) the position was ultimately filled by a younger person. *Taggart v. Time, Inc.* 924 F.2d at 46 (*citing Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919–20 (2d Cir.1981)).[3] Conroy must therefore show by a preponderance of the evidence that she was qualified for the Department Specialist position but was rejected under circumstances giving rise to an inference of unlawful discrimination. *Taggart v. Time, Inc.* 924 F.2d at 46 (*citing Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94). The inference of discrimination may be shown by direct evidence, statistical evidence, or circumstantial evidence such as documentation of preference for younger workers, all of which is aimed at persuading the trier of fact directly that the more likely reason for plaintiff not being hired was because of his age and that the employer's proffered reason was pretextual and not worthy of belief. *Taggart v. Time, Inc.* 924 F.2d at 46 (*citing Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.1988)).

### 1. Prima Facie Case

■ In the present action, Plaintiff succeeds in making out a prima facie case. First, Conroy clearly falls within the age group protected by ADEA because she was 56 years old at the time of her termination. Second, the position of Department Specialist was filled by a employee twenty-two years younger than Conroy. Third, Conroy has made a showing sufficient to establish that she was qualified for the position. The Department Specialist position required personal computer knowledge, including knowledge of Data Base III, Lotus 1–2–3, and Multi Mate software as well as excellent typing skills. In her affidavit, Conroy avers that she had full knowledge of personal computers, Database III and Lotus 1–2–3 because she had taught herself how to use them by means of in-house tapes. (Conroy Aff. ¶ 14) Conroy also testified at her deposition that she was familiar with Lotus 1–2–3 but "had no reason to use it in the department." She also knew how to do data entry on Database III. (Conroy Dep. at 84). Based on the foregoing, the Court finds that Conroy has succeeded in establishing a prima facie case.

### 2. Age as a Determinative Factor

■ Anchor claims that it is entitled to summary judgment because Conroy will be unable to establish by a preponderance of evidence at trial that age was a determinative factor in Anchor's decision not to offer Conroy the Department Specialist position. Under the *Douglas* test, once Conroy establishes a prima facie case, the burden shifts to Anchor to articulate a legitimate reason for its decision. If Anchor proffers a legitimate, nondiscriminatory reason for its decision to offer the Department Specialist position to Kissoon over Conroy, the burden shifts back to Conroy to establish that Anchor's reasons are pretextual. Conroy has the burden of proving that age was

**3.** Some courts have clarified how circuits should apply the *McDonnell Douglas* test in reduction-in-force cases. In order to make out a prima facie case in a reduction-in-force context, plaintiff must establish that (1) they are within the protected class; (2) they were qualified to assume another position; (3) some evidence exists which would allow a finder of fact to reasonably find discrimination against defendants. *Vaughn v. Mobil Oil Corp.,* 708 F.Supp. 595, 600 (S.D.N.Y.1989); (S.D.N.Y.1987) *Poklitar v. CBS, Inc.,* 652 F.Supp. 1023, 1026 (*citing Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). In the instant case, Plaintiff conceded in her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment that the consolidation of the Records Management Department was not itself discriminatory, but Anchor's failure to offer her the Department Specialist position was. Since Conroy is claiming entitlement to the specific position of Department Specialist, this court will apply the traditional *McDonnell Douglas* test.

a causative or a determinative factor in deciding whether the plaintiff should be employed. *Montana v. First Federal S. & L. of Rochester*, 869 F.2d 100, 104 (2nd Cir.1989) *Parcinski v. Outlet Company*, 673 F.2d 34, 36 (2d Cir.1982). On this motion for summary judgment, the evidence must create a genuine issue of fact as to Anchor's proffered reasons or as to a discriminatory motive. Based upon the record, the count fails to find anything creating a genuine issue of fact that anyone was motivated by a discriminatory purpose.

In relocating the Records Management Department, Anchor offered Conroy, Kissoon and Wilson several alternatives in compliance with the bank's policy of providing options to employees affected by transfers. Anchor offered all three employees the following options: transfers to Albion, another position within the company, and layoff with severance. Anchor's affidavits demonstrate that it attempted to find the affected employees alternative positions for which they were best qualified.

Anchor contends that it offered the position to Kissoon over Conroy because Kisson was better qualified for the position. The Department Specialist position required personal computer knowledge, including knowledge of Data Base III, Lotus 1–2–3, and Multi Mate software as well as excellent typing skills. According to Leonard Alpert, Anchor's Assistant Human Relations Regional Manager, Kissoon's personnel file indicated that she had completed computer courses including "Introduction to IBM PC/DPS" and "Introduction to Lotus 1–2–3" at the American Banking Institute. (Alpert Aff. ¶ 4). In addition, Kissoon had regularly worked with a personal computer as a Department Clerk in the Records Management Department. Kissoon's file also noted that she was capable of typing 50 words per minute. While the Court accepts Conroy's assertion that she had full knowledge of personal computers including Database III and Lotus 1–2–3 for the purpose of establishing a prima facie case, Conroy's personnel file made no mention of these skills. Therefore, Anchor de-

cided to offer the position to Kissoon because she was better qualified.

Conroy has produced no evidence that age was a motivating factor in Anchor's decision to offer the Department Specialist position to Kissoon. Conroy has failed to produced any direct evidence, such as statements Anchor that age was the reason for not offering Conroy the position or proof of circumstances from which an inference of age discrimination may be drawn. *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir.1984). Nor has Plaintiff established a pattern or practice of age discrimination by Anchor. *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 985–87, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). Having demonstrated an absence of evidence to support Conroy's claim that Anchor's proffered reasons are pretextual, Anchor is entitled to summary judgment.

### D. Rule 56(g) Sanctions

█ In its Reply Memorandum, Anchor moved for costs and attorney fees pursuant to Rule 56(g). Rule 56(g) provides as follows:

(g). Affidavits Made in Bad Faith

Should it appear to the satisfaction of the court at any time that any of the affidavits presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party reasonable expenses with the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Anchor claims that Rule 56(g) sanctions are appropriate because the preparation of Ms. Guyatri Kissoon's affidavit by Conroy's counsel constituted bad faith. Anchor's alleges that plaintiff's counsel led Kissoon to believe that she would not need to testify in court if she made the affidavit.

There is little case law applying Rule 56(g). In the rare instances in which courts have imposed Rule 56(g) sanctions, the conduct has been particularly egregious. *See, e.g., Alart Associates, Inc. v. Aptaker*, 402 F.2d 779 (2nd Cir.1968) (reas-

serting substantially the same grounds for summary judgment after the court had already twice rejected the theory); *Acrotube, Inc. v. J.K. Financial Group, Inc.*, 653 F.Supp. 470, 478 (N.D.Ga.1987) (affidavit clearly at odds with facts indisputably within affiant's knowledge). The question for this Court is whether there is sufficient evidence of bad faith by Conroy's counsel warranting the imposition of sanctions. While the Court is concerned by allegations that Conroy's counsel misled Kissoon in eliciting a signed statement from her, it is reluctant to credit Ms. Kissoon's statement given her status as an employee of Anchor. Therefore, in the absence of any other evidence of bad faith, the Court declines to sanction Plaintiff's attorney.[4]

## III. CONCLUSION

Defendant Anchor Savings Bank's summary judgment motion is granted and motion for costs and attorney's fees pursuant to Rule 56(g) is hereby denied.

So ordered.

See also 815 F.Supp. 99.

Thomas J. Troiano, Huntington, NY, for plaintiff.

Reisman, Peirez, Reisman & Calica, David H. Peirez, Garden City, NY, for defendants.

---

**4.** As for Anchor's argument that its attorney should have been notified of Plaintiff's counsel's intention to take testimony from Kissoon, Disciplinary Rule 7–104(A)(1) only prohibits an attorney from interviewing a party he *knows to be* *represented by an attorney.* (emphasis added.) Because Anchor does not assert that its attorney represents Kissoon, the Court concludes that Conroy's attorney did not violate any ethical cannon or disciplinary rule.