Vera JULIAN, Plaintiff,

v.

**NEW YORK CITY TRANSIT AUTHORITY, a municipal corporation created under the Laws of the State of New York; The Metropolitan Transit Authority, a municipal corporation created under the Laws of the State of New York; Raymond D. Goodman, Director, Labor Relations—Rapid Transit Operations; Mr. Pezza, Assistant to Mr. Goodman; Edward Krieger, Compensation Coordinator, Rapid Transit Operations Department, Labor Relations Division; Joyce Benn, Employee Benefits (NYCTA); Janet S. Holt, Administrative Manager, Worker's Compensation Bureau; Dr. Robert Swearington, a Consultant Doctor for the (NYCTA); The New York City Employees Retirement System (NYCERS); The Board of Trustees of (NYCERS), a body charged by law with the administration of the City Employees Pension Fund pursuant to the Administrative Code of the City of New York; The Medical Board of (NYCERS), a body charged by law with the responsibility of evaluating fairly the disability of applicants to (NYCERS); Julia Hegarty, Chief–Medical Division of (NYCERS); Rosemary Carroll, Ex–Attorney for Plaintiff; Carmen S. Suardy, Vice President Labor Relations, Labor Disputes Resolution at the (NYCTA); and Transport Workers Union (TWU) Local 100, Defendants.**

No. 93 CV 3279.

United States District Court,
E.D. New York.

May 6, 1994.

Vera Julian, pro se.

Edward F. Zagajeski, Law Dept., New York City Transit Authority, Brooklyn, NY, for defendants New York City Transit Authority, Raymond D. Goodman, Anthony Pezza, Edward Krieger, Carmen Suardy, Joyce Benn, Janet S. Holt, John Murphy, Herman Rosen M.D., and Marsh McCall, M.D.

O. Peter Sherwood, Corp. Counsel, by Anshel David, Asst. Corp. Counsel, New York City, for defendants Peter E. Stangl and Julia Hegarty.

Steven A. Rosen, New York City, for defendant Robert Swearington.

Ronald Kleigerman, Kleigerman & Friess, New York City, for defendant Rosemary Carroll.

Virginia M. Pettinelli, O'Donnell, Schwartz, Glanstein & Rosen, New York City, for defendant Transp. Workers' Union, Local 100.

*MEMORANDUM AND ORDER*

BARTELS, District Judge.

Plaintiff *pro se* Vera Julian brings this action challenging her termination from employment by the New York City Transit Authority ["TA" or "Transit Authority"] and the subsequent denial of disability benefits by the New York City Employees Retirement System ["NYCERS"]. The defendants have each moved to dismiss pursuant to Federal Rule of Civil Procedure ["Rule"] 12(c) for judgment on the pleadings, or pursuant to Rule 12(b)(6) or for failure to state a claim upon which relief may be granted. For reasons more fully explained herein, defendants' motions are granted, and plaintiff's complaint is dismissed in its entirety.

*FACTS*

Plaintiff, a black woman, was employed by the Transit Authority as a Railroad Clerk in the Station Division in May 1972, and was promoted to Train Operator in the Rapid Transit Division in May 1988. On June 14, 1988, plaintiff injured her back during job training for her new position, and did not return to work. On August 18, 1989, the Medical Services Department of the Transit Authority found that plaintiff was permanently disabled from performing the duties of her job title.

Subsequently, the Workers' Compensation Board found that plaintiff was disabled, and that her injury was caused by the accident at work; accordingly, plaintiff received Workers' Compensation benefits. In addition, the United States Department of Health & Human Services found plaintiff to be disabled and unable to do light duty work for purposes of receiving Social Security disability benefits.

In September 1989, plaintiff submitted an application for accident disability retirement to NYCERS, the municipal agency charged with administration of the city employees' pension funds. Meanwhile, by letter dated June 25, 1990, Raymond Goodman, Transit Authority Director of Labor Relations, Rapid Transit Operations, advised plaintiff that she would be terminated as of July 15, 1990 pursuant to the New York Civil Service law,

because she had been unable to work for more than one year. The June 25 letter further stated that under the Civil Service Law, plaintiff had the right to apply for reinstatement within one year of her termination. Finally, the letter advised plaintiff that she may be eligible for ordinary or accidental disability benefits, and that she was required to apply for them while still an active employee. Accordingly, Goodman's letter stated that the Transit Authority would defer her termination pending NYCERS' final decision on her disability retirement application, provided plaintiff cooperated with the application process.

Plaintiff wrote to Goodman on July 5 advising him that she had already applied for disability retirement and was awaiting a determination. Apparently due to an error on the part of the Transit Authority, plaintiff received a second letter from Goodman on August 1, 1990 stating that she had been terminated. When plaintiff complained that her termination was premature because no final decision had been made by NYCERS with respect to her disability benefits, Goodman responded that her August 1 termination was proper because NYCERS had denied her application on July 31. However, Goodman's letter was incorrect; NYCERS' Board of Trustees did not finally deny plaintiff's application for accident disability retirement until August 6.

The bureaucratic morass deepened when plaintiff attempted to exercise her right to appeal NYCERS' denial of her application for disability retirement. Plaintiff found herself in a Catch–22 when she received a letter from NYCERS dated September 10, 1990 stating that her appeal would not be processed because plaintiff had been terminated, and was therefore no longer an active employee.

Unable either to work or to obtain retirement benefits, plaintiff hired attorney Rosemary Carroll, one of the defendants herein. In December 1990, Carroll filed an action against the Transit Authority and NYCERS in the Supreme Court of the State of New York, New York County, pursuant to Article 78 of the New York Civil Practice Law and Rules, challenging plaintiff's termination

from employment and the denial of her accident disability retirement application. On October 16, 1991, the court so-ordered a Stipulation and Order pursuant to which the Transit Authority agreed to rescind plaintiff's termination and place her on a leave of absence without pay and benefits for the purpose of allowing plaintiff to apply for disability benefits. The Stipulation provided that plaintiff would file an application for ordinary disability retirement and renew her application for accident disability retirement with NYCERS, and NYCERS would review both applications. In addition, the Transit Authority would continue her leave of absence pending NYCERS' final decision on the retirement applications, and plaintiff agreed to release the Transit Authority from all claims against it.

In accordance with the terms of the agreement, the Transit Authority reinstated plaintiff on November 4, 1991 and placed her on a leave of absence, for the sole purpose of filing her disability applications with NYCERS. Subsequently, the Medical Board of NYCERS recommended denial of both of plaintiff's applications, and by letter dated May 27, 1992, the Board of Trustees of NYCERS denied plaintiff's applications for ordinary and accident disability retirement. The letter of denial advised plaintiff of her right to appeal the decision of the Board of Trustees within 15 days.

In March 1993, plaintiff returned to state court and moved to hold the Transit Authority and NYCERS in contempt for failing to abide by the terms of the October 16, 1991 stipulation. On May 25, 1993, Supreme Court Justice Alfred Toker found that both defendants had complied fully with the stipulation and accordingly denied the contempt motion.

On July 1, 1993, plaintiff filed this action against the Transit Authority, NYCERS, several municipal employees, and other individuals, including a physician who examined plaintiff and her former attorney in the Article 78 proceeding. The complaint alleges employment discrimination under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act based on plaintiff's race, gender, age, marital status and disability. Plaintiff also alleges a conspiracy among the defendants to violate her civil rights, retaliation claims, due process violations, and a variety of state law claims including defamation, breach of fiduciary duty, legal malpractice and violation of a court order.

In the interest of clarity, the following chronological summary sets forth the relevant events in this case:

May 1972 Plaintiff was hired by the Transit Authority.

June 14, 1988 Plaintiff sustained an on-the-job injury.

August 18, 1989 Transit Authority found plaintiff permanently disabled from performing her job.

September 1989 Plaintiff submitted application with NYCERS for disability retirement benefits.

June 25, 1990 Transit Authority advised plaintiff that she would be terminated on the ground that she was unable to perform her job for more than one year.

August 1, 1990 Transit Authority terminated plaintiff's employment.

August 6, 1990 NYCERS' Board of Trustees denied plaintiff's application for disability benefits.

September 10, 1990 NYCERS denied plaintiff's appeal on the ground that she was no longer a municipal employee.

October 16, 1991 Stipulation and Order entered in plaintiff's Article 78 proceeding.

November 4, 1991 Transit Authority reinstated plaintiff and placed her on a leave of absence for the purpose of allowing her to file applications for disability retirement benefits with NYCERS.

May 27, 1992 NYCERS denied plaintiff's applications for ordinary and accidental disability retirement based on a finding that plaintiff was not disabled.

May 25, 1993 State court found that the Transit Authority and NYCERS had complied with the October 16, 1991 Stipulation.

July 1, 1993 Plaintiff filed the instant action.

## DISCUSSION

### I. LEGAL STANDARDS FOR A MOTION TO DISMISS

■ The court may grant a motion to dismiss pursuant to Rule 12(b)(6)[1] only where it is beyond doubt that the plaintiff cannot prove any set of facts supporting entitlement to relief. *H.J. Inc. v. Northwestern Bell Telephone Company,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In deciding the motion, the court must accept as true the material facts alleged in the complaint, *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In addition, complaints drafted by *pro se* plaintiffs must be construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *LaBounty v. Adler,* 933 F.2d at 122.

### II. RES JUDICATA

■ Defendants NYCERS and the Transit Authority argue that this action is barred by res judicata because plaintiff's claims have been, or could have been, adjudicated in the Article 78 proceeding in state court. The federal courts are required to afford a state court judgment the same preclusive effect that the courts of the state would give it. 28 U.S.C. § 1738. *See also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Milltex Industries Corp. v. Jacquard Lace Company, Ltd.,* 922 F.2d 164, 166 (2d Cir.1991). Under New York law, a party may not relitigate an issue in a subsequent proceeding if: (1) the identical issue was raised in the earlier action; (2) the issue was necessarily decided in the earlier action; and (3) the party had a full and fair opportunity to litigate the issue in the earlier action. *See, e.g., Ryan v. New York Telephone Company,* 62 N.Y.2d 494, 500–01, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984).

The claims initially raised by plaintiff in the Article 78 proceeding were resolved by stipulation between the parties. Plaintiff's subsequent claims resulted in Justice Toker's determination that defendants had complied with the stipulation as of March 1993. However, it is not clear that Justice Toker's denial of the contempt motion constitutes a final judgment conclusively resolving all of plaintiff's claims for purposes of invoking res judicata. *See, e.g., Neuman v. Pike,* 456 F.Supp. 1192, 1205 (S.D.N.Y.1978), *aff'd in relevant part,* 591 F.2d 191 (2d Cir.1979); *Bannon v. Bannon,* 270 N.Y. 484, 489, 1 N.E.2d 975 (1936); *Kilduff v. Donna Oil Corp.,* 74 A.D.2d 562, 424 N.Y.S.2d 282, 284, (2d Dep't.1980).

Furthermore, regardless of the res judicata effect of the Article 78 proceeding, plaintiff is barred, as a contractual matter, by the terms of the settlement from asserting claims relating to her termination against the Transit Authority. Courts must look to the totality of the circumstances in determining whether settlement and waiver of discrimination claims is knowing and willful. *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.), *cert. denied,* 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989). In this case, the settlement agreement was clear, plaintiff was represented by an attorney, and the Transit Authority provided consideration for plaintiff's waiver of her claims. Plaintiff asserts that she never intended to relinquish her rights against the Transit Authority. Nevertheless, plaintiff obtained a benefit in exchange for the waiver in that the Transit Authority agreed to, and did, reinstate plaintiff as a New York City employee so that she could reapply for disability retirement. Accordingly, plaintiff may not maintain her claims against the Transit Authority for actions which arose prior to October 16, 1991, the date of the Stipulation and Order. Plaintiff is not barred by the terms of the settlement from asserting claims arising af-

---

1. Although several of the defendants have answered the complaint and are moving pursuant to Rule 12(c), Rule 12(h)(2) provides that failure to state a claim may be raised in a motion for judgment on the pleadings. Such a motion is treated like a 12(b)(6) motion. *See, e.g., Ad–Hoc Committee v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987); *Official Publications v. Kable News Co.,* 775 F.Supp. 631, 634 (S.D.N.Y.1991).

ter that date. In addition, the Court finds that Justice Toker's denial of the contempt motion does not bar plaintiff from asserting discrimination claims against the Transit Authority and NYCERS.

## III. DISCRIMINATION CLAIMS

Plaintiff alleges that defendants discriminated against her on the basis of her race, sex, age, marital status and disability, in violation of 42 U.S.C. § 1983 ["Section 1983"], Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ["Title VII"], and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ["ADEA"].

### A. *42 U.S.C. § 1983*

█ Section 1983 provides a civil claim for damages and injunctive relief against any person who deprives another of a federal constitutional or statutory right under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988); *Cullen v. Margiotta,* 811 F.2d 698, 712 (2d Cir.1987), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). In support of these allegations, the plaintiff must set forth highly specific facts and not merely conclusory allegations. *See, e.g., Spear v. Town of West Hartford,* 771 F.Supp. 521, 527 (D.Conn.1991), *aff'd,* 954 F.2d 63 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

█ Section 1983 does not, in itself, create substantive rights; in order to prevail, a plaintiff must demonstrate a violation of an independent federal constitutional or statutory right. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979); *Conlon v. City of Long Beach,* 676 F.Supp. 1289, 1297 (E.D.N.Y.1987). The federal statutory rights asserted by plaintiff as a basis for her § 1983 claim are Title VII and ADEA. However, plaintiff is barred from raising these claims in federal court because she has failed to exhaust administrative remedies. As a condition precedent to bringing a Title VII action, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ["EEOC"] within 300

days of the discriminatory act and obtain a right-to-sue letter. 42 U.S.C. § 2000e–5(e), (f)(1). *See, e.g., Sandler v. Marconi Circuit Technology Corp.,* 814 F.Supp. 263, 269 (E.D.N.Y.1993); *Kawatra v. Medgar Evers College of the City University of New York,* 700 F.Supp. 648, 654 (E.D.N.Y.1988). ADEA contains a similar exhaustion requirement. 29 U.S.C. § 626(d). *See, e.g., Dennis v. Pan American World Airways, Inc.,* 746 F.Supp. 288, 290 (E.D.N.Y.1990). Since plaintiff has not filed a complaint with the EEOC and the time to do so has passed, this court may not consider plaintiff's discrimination claims.

### B. *Title VII*

█ Moreover, even if plaintiff had exhausted properly administrative remedies, her conclusory allegations of discrimination are not sufficient to withstand a motion to dismiss. Title VII prohibits the discrimination against any individual with respect to "the terms and conditions of employment because of such individual's race, color, religion, sex, or national origin...." *See also Wards Cove Packing Company, Inc. v. Atonio,* 490 U.S. 642, 645, 109 S.Ct. 2115, 2119, 104 L.Ed.2d 733 (1989); *Fernandez v. United States Postal Service,* 804 F.Supp. 448, 450 (E.D.N.Y.1992). A plaintiff alleging discriminatory treatment under Title VII bears the initial burden to show that he or she: (1) was a member of a protected class; (2) was qualified for a particular position; (3) was not hired for, or fired from, the position; and (4) the rejection or discharge occurred in circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir.1991); *Fernandez v. United States Postal Service,* 804 F.Supp. 448, 451 (E.D.N.Y.1992).

█ Construing the facts in the light most favorable to plaintiff, the complaint fails to make out a *prima facie* Title VII case. Although plaintiff has set out the facts of this case in meticulous detail, they do not support an inference that her termination from employment at the Transit Authority and NYCERS' denial of her applications for disabili-

ty retirement were based on race, sex or national origin.[2] Plaintiff makes conclusory statements regarding defendants' "history of not only denial of opportunity, but, that of a general policy and practice of—once hired—managing to sabotage women and black men ... as to force them to resign"; however, she does not describe with particularity any such policy or custom, or demonstrate that these allegations are related to the events which gave rise to this action. Accordingly, plaintiff's allegations are insufficient to withstand a motion to dismiss.

## C. *Age Discrimination*

 With respect to discrimination on the basis of age, ADEA provides that is unlawful "to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a). To establish a claim of age discrimination, a plaintiff must show that he or she (1) was between 40 and 70 years of age; (2) was qualified for a particular position; (3) was not hired for, or fired from, the position; and (4) the position was ultimately filled by a younger person. *See, e.g., Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507–08 (2d Cir.1994); *Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *Conroy v. Anchor Savings Bank, FSB,* 810 F.Supp. 42, 47 (E.D.N.Y.1993). In this case, although plaintiff was within the protected age group at the time of her termination, she does not allege that she was qualified to continue her employment; rather, the facts show that plaintiff was fired pursuant to the Civil Service law because of her injury and resulting inability to work at her job. *See, e.g., Robinson v. Transworld Airlines, Inc.,* 947 F.2d 40, 42 (2d Cir.1991).

## D. *Disability Discrimination*

 Plaintiff also alleges that defendants discriminated against her on the basis of a disability or handicap. However, Title VII does not prohibit discrimination against individuals with disabilities. *See, e.g., Prince v. Westchester County Department of Health,* 1992 WL 123170, *4 1992 U.S.Dist. LEXIS 7717 at *10 (S.D.N.Y. May 27, 1992). Effective July 26, 1992, The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ["ADA"], prohibits discrimination against individuals with disabilities. However, the discriminatory actions alleged by plaintiff occurred prior to the effective date and are therefore not covered by ADA. *Id.* Finally, plaintiff cannot state a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination by federal employees on the basis of a handicap because none of the defendants qualify as programs receiving federal financial assistance. *See, e.g., Bates v. Long Island Railroad,* 997 F.2d 1028, 1035 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); *Hogarth v. Thornburgh,* 833 F.Supp. 1077, 1084 (S.D.N.Y.1993); *Conlon v. City of Long Beach,* 676 F.Supp. 1289, 1293 (E.D.N.Y. 1987). Therefore, plaintiff's assertion that the Transit Authority should have accommodated her disability by transferring her to a suitable position fails to state a cause of action under federal law.[3]

## IV. DUE PROCESS CLAIMS

 Plaintiff's § 1983 claims also allege denial of procedural due process under the Fourteenth Amendment in connection with her termination and the denial of her retirement disability benefits. A municipal employee's entitlement to disability retirement is a constitutionally protected property interest for purposes of § 1983. *Russell v. Dunston,* 896 F.2d 664, 668–69 (2d Cir.), *cert. denied,* 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990). *Cf. Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, the Supreme Court has held that due process will be satisfied if state law provides adequate post-deprivation procedures. *Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908,

---

2. Further, Title VII does not prohibit discrimination on the basis of marital status. *See, e.g., Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188, 200 n. 12 (S.D.N.Y.1990).

3. New York Executive Law § 296(1) provides a cause of action under state law for employment discrimination against the disabled.

——, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In this case, plaintiff challenged her termination in a proceeding under Article 78, the appropriate mechanism under New York law for challenging a decision by a state or local agency. *See, e.g., Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 101 (2d Cir.), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988). Moreover, the Second Circuit has held that a state Article 78 proceeding is sufficient to provide constitutional due process for a municipal employee challenging a random procedural error in denial of retirement benefits. *Id.* at 102–03. Accordingly, plaintiff fails to state a due process claim under § 1983.

## V. RETALIATION CLAIMS

Plaintiff alleges that her termination and the denial of her disability retirement applications constitute impermissible retaliation for exercise of her First Amendment rights and for refusing to accept willingly defendants' discriminatory treatment. Plaintiff also claims that defendants retaliated against her for participating in proceedings relating to her Workers' Compensation, Social Security, and disability retirement benefits.

### A. *First Amendment*

The First Amendment prohibits the discharge of a state employee for the exercise of constitutionally protected speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). The threshold question in determining whether an employee was wrongly discharged is whether she engaged in speech which may be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993). When an employee speaks on matters of personal interest, however, a federal court need not review the propriety of subsequent employment action. *Connick v. Myers,* 461 U.S. at 147, 103 S.Ct. at 1690; *White Plains Towing Corp. v. Patterson,* 991 F.2d at 1058.

In *Santiago v. Temple University,* 739 F.Supp. 974 (E.D.Pa.1990), *aff'd,* 928 F.2d 396 (3d Cir.1991), the court held that a workers' compensation claim was not speech which addressed matters of public concern because filing such a claim "is a matter between an individual and his employer." 739 F.Supp. at 981. Similarly, plaintiff's efforts to obtain various disability and retirement benefits were private issues with the Transit Authority and NYCERS regarding personal matters, and therefore do not constitute issues of public concern for First Amendment purposes.

Moreover, plaintiff's charges of discriminatory employment practices were not raised until June 11, 1992, when she filed a complaint with the New York State Human Rights Commission. This filing took place after her termination and the denial of her disability retirement applications; therefore plaintiff cannot demonstrate a causal connection between the protected behavior and the allegedly retaliatory denial of her benefits. In addition, plaintiff's claim that defendants discriminated against her in retaliation for her "whistle-blowing" by exposing defendants' discriminatory practices is lacking factual support. Plaintiff does not describe with particularity any practice or custom of the defendants that discriminates against any protected class. Her conclusory allegations of discriminatory policies are therefore insufficient to state a claim for retaliatory discharge.

### B. *Title VII*

In addition, Title VII prohibits retaliation against individuals who have opposed allegedly unlawful employment practices. 42 U.S.C. § 2000e–3(a). However, as noted above, plaintiff's Title VII claims are barred by her failure to exhaust administrative remedies by the timely filing of a discrimination complaint with the EEOC. Moreover, plaintiff has not established a *prima facie* retaliation claim, which consists of:

(1) protected participation or opposition under Title VII known by the retaliator; (2) adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *See, e.g., DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188, 204 (S.D.N.Y.1990). In this case, plaintiff does not allege that she engaged in protected activity under Title VII prior to the filing of this lawsuit. Plaintiff did not file charges with the EEOC or raise Title VII claims in her state court action. As noted above, plaintiff first raised discrimination claims before the Human Rights Commission in June 1992, after her termination and the denial of her disability retirement applications. Accordingly, she cannot make out a causal connection between any protected activity and adverse employment action.

## VI. CONSPIRACY TO VIOLATE CIVIL RIGHTS

■ Plaintiff alleges that all of the defendants conspired to deprive her constitutional rights. 42 U.S.C. § 1985 prohibits such a conspiracy where the plaintiff demonstrates: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Laverpool v. New York City Transit Authority,* 760 F.Supp. 1046, 1055 (E.D.N.Y.1991).

■ A complaint alleging a conspiracy to violate civil rights is held to heightened pleading standards. *See, e.g., Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.) (per curiam), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983); *Katz v. Morgen-thau,* 709 F.Supp. 1219, 1230–31 (S.D.N.Y.) (citing cases), *aff'd in relevant part,* 892 F.2d 20 (2d Cir.1989) (per curiam). "To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." *Duvall v. Sharp,* 905 F.2d 1188, 1189 (8th Cir.1990) (per curiam).

■ Plaintiff's conclusory allegations in this case are insufficient to meet the heightened standards required to maintain a civil rights conspiracy claim. Although plaintiff has demonstrated inextricable bureaucratic confusion and delay in the handling of her case, the complaint allegations do not show a mutual understanding among the defendants to deprive her constitutional or statutory rights.

## VII. PENDENT STATE CLAIMS

■ In addition to her federal causes of action, plaintiff asserts a variety of state claims, including: employment discrimination under New York Human Rights and Executive Laws; breach of contract; breach of fiduciary duty; violation of the October 16, 1991 Stipulation and Order; defamation by Dr. Swearington in his medical reports of plaintiff's examination; and malpractice by attorney Carroll by entering into a settlement of plaintiff's Article 78 action without her consent. Since plaintiff's federal claims have been dismissed, this is not an appropriate case for the exercise of the court's pendent jurisdiction over state claims. *See, e.g., United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 32 (2d Cir.1994); *Fleischman v. Grinker,* 769 F.Supp. 147, 152 (S.D.N.Y.1991). Accordingly, plaintiff's state claims must be dismissed as well.

## CONCLUSION

The facts of this case suggest that plaintiff has been damaged by the actions of some of the defendants. She was injured on the job in the course of her employment, and the Transit Authority subsequently terminated her on the ground that she was disabled from performing her job. Subsequently, a bureau-

cratic error led to plaintiff's premature termination, and NYCERS then denied her application for disability retirement on the ground that she was no longer a city employee. Plaintiff was forced to hire an attorney and file an Article 78 proceeding in an effort to obtain retirement benefits. Three years after plaintiff's accident, the Transit Authority rescinded plaintiff's mistaken termination and NYCERS agreed to consider the merits of her disability applications. By that time, it appears that plaintiff's back injury had substantially improved, and NYCERS found that she was not permanently disabled. Plaintiff's applications for ordinary and accidental disability retirement were then denied.

Plaintiff is now 58 years old. She has been terminated from the job she performed satisfactorily for 16 years following an on-the-job injury, and yet she has been denied disability retirement benefits. However, despite the apparent inequity of her situation, plaintiff cannot turn her case into a discrimination action. Federal law simply does not provide redress for her injuries under these circumstances. Plaintiff's sole remedy lies in state court where she should examine the following possibilities: (1) a second Article 78 proceeding challenging the May 27, 1992 denial of her benefit applications as arbitrary and capricious; (2) an action for breach of contract against NYCERS, *see* N.Y. Constitution article V, § 7 ("membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship...."). *See also Campo v. New York City Employees' Retirement System,* 843 F.2d at 103 n. 7; and (3) an equitable estoppel claim that the City of New York is estopped from finding plaintiff not to be disabled and refusing to pay benefits after terminating her employment on the basis that she was disabled.

For all of the foregoing reasons, defendants' motions to dismiss are GRANTED, and plaintiff's complaint is DISMISSED in its entirety.

SO ORDERED.