COLE FISHER ROGOW, INC., Respondent, v. CARL ALLY, INC., et al., Appellants, et al., Defendants.

First Department, March 26, 1968.

*Carleton G. Eldridge, Jr.,* of counsel (*Stephen Sayre Singer* with him on the brief; *Coudert Brothers,* attorneys), for Carl Ally, Inc., and others, appellants.

*Ambrose Doskow* of counsel (*Peter F. Nadel* with him on the brief; *Rosenman Colin Kaye Petschek Freund & Emil,* attorneys), for Richard L. Gilbert and others, appellants.

*George Charak* of counsel (*Seymour B. Goldfeld* with him on the brief; *Goldfeld, Charak, Tolins & Lowenfels,* attorneys), for respondent.

STEVENS, J. P. Defendants appeal from an order entered June 28, 1967 which denied their motions to dismiss the first cause of action, and from so much of said order as dismissed the second cause of action without prejudice to the service of an amended complaint.

The complaint contains two causes of action, the first in libel against 52 signers of an advertisement, and the second in slander against 2 individual defendants. Plaintiff, an advertising agency, alleges it was employed by the Independent Citizens Committee Against Civilian Review Boards (Independent Citizens) to publicize the Independent Citizens' position in support of a proposition to be voted upon by the electorate in an election held November 8, 1966. The Independent Citizens, some other organizations and individuals were opposed to civilian review boards. Adopting a contrary position, as did other individuals, groups and organizations, was the Federated Associations For Impartial Review (Federated).

The complaint alleges, upon information and belief, that Federated retained Smith-Greenland Co., Inc. and J. Walter

Thompson Co. as advertising agencies. Evidently this was to publicize Federated's position. The complaint alleges further that defendants Richard L. Gilbert and Martin L. Smith prepared a certain advertisement, signed by the other defendants-appellants, which appeared in *The New York Times* on November 7, 1966. The advertisement, minus the signatures, follows:

" This message is neither for nor against the Civilian Review Board. It is against a certain type of advertising.

"When integrity, taste and discretion are the losers — who wins? Appeals to passion, and the use of deceptive inflammatory statements in the advertising campaign by the Independent Citizens Committee Against Civilian Review Boards only confuse and frighten the public and make reasoned judgment difficult.

" When advertising is used solely to exploit and incite emotion, our craft is dishonored and damage is done to advertising prudence and credibility.

" This advertisement is sponsored by the following members of the advertising·industry: "

The complaint alleges that the advertisement " referred by innuendo to plaintiff." In the first cause plaintiff demands $8,000,000 damages. In the second cause, in slander, plaintiff charges Gilbert and Smith with speaking the words appearing in the advertisement and seeks $1,000,000 from such defendants. No special damages are pleaded in either cause.

Before discussing the alleged offending advertisement or the function of innuendo in connection therewith, the following observation is made concerning the general topic of the Civilian Review Board. This court may take judicial notice of its own record that there was sufficient public interest generated to have the matter of amending the Charter of the City of New York to exclude the creation of such boards submitted to the electorate as a public issue (see *Matter of Cassese* v. *Katz,* 26 A D 2d 248, affd. 18 N Y 2d 694; see, also, *Cassese* v. *Lindsay,* 51 Misc 2d 59, in which the power of the Police Commissioner to create an advisory review board [generally termed a Civilian Complaint Review Board] had previously been upheld.) When the proposition was submitted later to the electorate, the voters expressed disapproval of such a board. The affidavit of plaintiff's president characterized the advertisement complained of as " a device to defeat the Proposition by attacking both the Independent Citizens and the plaintiff." This contradicts plaintiff's claim in its pleading that the sole purpose of the advertisement was to bring plaintiff into disrepute.

The court is not bound to take judicial notice of matters of fact. However, it may and frequently does so where "the nature of the subject, the issue involved and the apparent justice of the case" (*Hunter* v. *New York, Ontario & Western R. R. Co.*, 116 N. Y. 615, 621) so dictate. The issue of the Civilian Complaint Review Board was so widely discussed, its merits so hotly debated among all segments of the population subject to our jurisdiction, that we take judicial notice of the fact that the subject was a matter of great and legitimate public interest. The record before us also supports the conclusion that such board was a topic of great public interest and concern. (See, generally, 9 Wigmore, Evidence [3d ed.], Judicial Notice, § 2571 *et seq.*)

Discussion of the advertisement begins with an examination of its headline which reads as follows: "This message is neither for nor against the Civilian Review Board. It is against a certain type of advertising." Giving the quoted language its ordinary meaning, one would reasonably conclude that its creators and those who adopted it proposed to condemn or express abhorrence to a "certain type of advertising." The examination of the advertisement cannot conclude with the headline but must go further. "The rule is general that both the headline and the item to which it is attached are to be considered as one document in determining the effect of an article complained of as being defamatory. They are construed together in deciding whether the article is libelous, to ascertain the character of the libel, and to find against whom the libel is directed" (34 N Y. Jur., Libel and Slander, § 54; *Kloor* v. *New York Herald Co.*, 200 App. Div. 90). A reading of the language in the body of the advertisement leads to the conclusion that the headline is a fair index of the matter to which it refers. To determine if the headline is fair, it and the entire content of the advertisement must be construed together (*Lawyers' Co-op. Pub. Co.* v. *West Pub. Co.*, 32 App. Div. 585, 590).

Although plaintiff is not named in the advertisement, it complains that such advertisement injured its good name and injured it in its business. "It seems to be well settled that where a libel does not name the plaintiff he may give evidence of all the surrounding circumstances and other extraneous facts which will explain and point out the person to whom the allusion applies" (*Van Ingen* v *Mail & Express Pub. Co.*, 156 N. Y. 376, 386). The omission of plaintiff's name is not fatal to its cause.

Libel falls into two broad categories — that which is libelous per se, that is, libelous on its face, for which no special damages need be pleaded, and that which requires an averment, called an innuendo, to show the defamatory meaning and the application of the language used to the plaintiff. In effect, plaintiff concedes that the language is not libelous on its face. for it expressly asserts that the advertisement "referred by innuendo to plaintiff." Plaintiff must show, therefore, that the language "is capable of communicating a defamatory idea when certain extrinsic facts are known or when the words are given a meaning not ordinarily attributed to them" (1 Harper & James, Law of Torts, § 5.9, pp. 372–373). Even then the language must be given a common sense construction (*Nichols* v. *Item Publishers,* 309 N. Y. 596, 601). Whether or not the language of the advertisement is capable of the libelous meaning charged by the innuendo is a matter of law for the court to decide (*Tracy* v. *Newsday, Inc.,* 5 N Y 2d 134, 136). "The plain obvious meaning of the written article cannot be altered or changed by innuendo" (*Kloor* v. *New York Herald Co.,* 200 App. Div. 90, 91, *supra*). "The test of libel is whether to the mind of an intelligent man the tenor of the article and the language used naturally import a criminal or disgraceful charge" (*Hills* v. *Press Co.,* 122 Misc. 212, 213, affd. 214 App. Div. 752 on opn. STALEY, J.).

The libel here complained of is libel with respect to a business or profession. Therefore, the language used must tend directly to injure plaintiff in its business, profession or trade, and must "impute to the plaintiff some quality which would be detrimental, or the absence of some quality which is essential to the successful carrying on of his office, profession or trade" (Gatley, Libel and Slander [6th ed.], p. 34). Since plaintiff relies on the alleged innuendo meaning of the language, it should plead such meaning, the special facts necessary to support its contention, and also plead special knowledge possessed by those to whom the words were published which support that meaning (see Gatley, Libel and Slander [6th ed.], p. 52). "If the article is not susceptible of a libelous meaning, then innuendo cannot make it libelous. * * * 'The question which an innuendo raises, is * * * [one] of logic. It is, simply, whether the explanation given is a legitimate conclusion from the premise stated.' * * * The innuendo, therefore, may not enlarge upon the meaning of words so as to convey a meaning that is not expressed" (*Tracy* v. *Newsday, Inc.,* 5 N Y 2d 134, 136, *supra*).

Tested by the foregoing, only a strained, unreasonable and unjustified innuendo would support plaintiff's contention. The entire tenor of the advertisement, in the actual language used, is directed toward disapproval of the use of a particular type of advertising. While the second paragraph of the advertisement identifies the user of such advertising as the Independent Citizens, by no reasonable construction can it be concluded that the public or the community to which such language was addressed, would construe the language in a manner harmful to plaintiff in its profession. The plain import of the language is not libelous. Plaintiff here is seeking by the use of innuendo to enlarge rather than explain in its effort to ascribe a defamatory meaning to the language. Plaintiff seeks, also by innuendo, to have itself identified in the public mind as the target of such alleged defamation. It is doubtful if the general public was aware of plaintiff's existence or even concerned with it. Even if the public were so aware the result should not be altered. The language is not open to the interpretation sought to be applied to it. Fairly read, any reference to plaintiff is excluded. So read, it is at variance with plaintiff's contentions and the first cause for libel should not be sustained (cf. *Drug Research Corp.* v. *Curtis Pub. Co.,* 7 N Y 2d 435; *Gurtler* v. *Union Parts Mfg. Co.,* 285 App. Div. 643; *Everett* v. *Gross,* 22 A D 2d 257).

The second cause of action, in slander, realleges the paragraphs upon which the alleged libel rests. It alleges also that in the advertising campaign the named defendants represented interests adverse to plaintiff and they spoke the "false and defamatory words set forth in the Advertisement." Special Term properly dismissed such cause of action and the dismissal is affirmed. Since, as heretofore indicated, the language is not considered defamatory of plaintiff, and in our view cannot be made so, leave to replead should not have been granted.

Plaintiff alleges that it prepared the material, examples of which appear in the record, which it presented to the public through the Independent Citizens. The topic of the Civilian Review Board, as previously pointed out, was one of legitimate public interest. Since plaintiff's creations were submitted to the public, they became for purposes of the law of defamation public property, subject to public criticism and comment thereon by any and all members of the public, subject only to the limitation that it be fair comment (Restatement, Torts, § 610, subd. [2], c). The manner and method of advertising on matters affecting public interest is itself a matter of public concern.

"The principle of 'fair comment' affords legal immunity for the honest expression of opinion on matters of legitimate public

interest when based upon a true or privileged statement of fact " (1 Harper & James, Law of Torts, p. 456; 35 N. Y. Jur., Libel and Slander, § 126 *et seq.*; Gatley, Libel and Slander, p. 317 *et seq.*; Restatement, Torts, § 610). The privilege of fair comment is defeasible, but it may only be defeated by a showing of actual malice. The privilege of criticism extends to advertisements (Restatement, Torts, § 610, subd. [2]). The criticism here was of a type of advertising, a product, not upon plaintiff or any individual in a private capacity.

The issue here involved was public and of public interest. Plaintiff, itself, would seem to negative any claim of actual malice when it asserts the advertisement was used in an effort to defeat the proposition — a legitimate device for use by a competitor. Nor are any evidentiary facts presented to show actual malice or to raise a reasonable doubt that the advertisement represented an honest opinion as to the use of a certain type of advertising. The inferences drawn are fair inferences, the facts are truly stated or sufficiently identified with reference to the advertising campaign (*Foley* v. *Press Pub. Co.,* 226 App. Div. 535, 545). Nothing is set forth to warrant the imputation of corrupt or dishonorable motives to these defendants. The advertisement was nothing more than fair comment. It is so held and serves as a complete defense to the action (*Julian* v. *American Business Consultants,* 2 N Y 2d 1; 35 N. Y. Jur., Libel and Slander, § 127).

Freedom of speech is essential to the preservation of the democratic process. On issues of great public concern opinions may, and frequently do, differ widely. Untrammelled debate, with a right of free expression exercised within constitutional limits, is to be encouraged to facilitate an exchange of information and the reaching of an informed, though not necessarily a wise, conclusion. Opinions on public issues should not be unduly limited in expression. Unless their public voice is premised upon false facts, evidence a reckless disregard for the truth, or are actuated by malice, the right to speak is secured and protected by the First Amendment. The constitutional guarantees of freedom of speech and of the press apply as well to a paid commerical advertisement (see *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 266). The opinion expressed in the advertisement of which plaintiff complains bore a reasonable relation to the stated and known facts, was the defendants' honest interpretation of such facts, which were facts of public concern with reference to the campaign, and facts of common knowledge. Such facts were not falsified but truly stated. There is nothing from which a reasonable person could

even infer a design to harm the plaintiff. Consequently the opinion finds protection within constitutional limits of the right to freedom of expression. Only an undue and impermissible stretching of the rule with regard to libel would make either the advertisement libelous or identify plaintiff as the author. Nor has plaintiff pleaded special damages.

The order appealed from should be modified, on the law, to grant the motion to dismiss the complaint in its entirety, without leave to replead either cause. As so modified the order should be otherwise affirmed, with costs and disbursements to appellants.

STEUER, CAPOZZOLI, RABIN and McNALLY, JJ., concur.

Order entered on June 28, 1967 unanimously modified, on the law, so as to grant defendants' motions to dismiss the complaint in its entirety, with $10 costs, without leave to replead either cause, and, as so modified, affirmed, with $50 costs and disbursements to the appellants.