■ PHILIP SELDON et al., Respondents, v MARVIN SHANKEN et al., Appellants.—Order, Supreme Court, New York County (Burton Sherman, J.), entered September 9, 1987, which, *inter alia,* denied the defendants' motion for summary judgment dismissing the complaint, unanimously reversed to the extent appealed from, on the law, and the motion for summary judgment dismissing the complaint granted, with costs.

Plaintiff Philip Seldon is a renowned wine expert who edits and publishes a magazine about wine, Vintage, owned by his company, plaintiff Wine News, Inc. Plaintiffs bring this action for libel based on an article published in the April 1-15, 1985 edition of the defendants' magazine Wine Spectator concerning the editorial and advertising policies of Vintage, and a letter to the editor published in the May 1-15, 1985 issue of Wine Spectator concerning the same issues.

The article in question was entitled "Editorial Space for

Sale in *Vintage"* and reported that Vintage had announced a new policy of offering " 'in-depth editorial coverage to those [wineries] willing to subsidize the writing and printing process' " and that companies that ignored Vintage's phone calls, or that advertised in rival publications but failed to advertise in Vintage, would not have their products reviewed. The article also reported Seldon's attempt to solicit wineries to buy space in a weekly " 'paid advertisement' ", or "advertorial", column that Seldon planned to run in the New York Times or Los Angeles Times, and that the New York Times had refused to run Seldon's advertisement.

The complained-of letter to the editor was an unsolicited letter from a Wine Spectator reader who recounted bad experiences that he had had with Seldon and Vintage and offered his negative opinion of Vintage and its new policy.

The Wine Spectator article was based on three letters that Vintage openly distributed to members of the wine trade. The first letter announced the "advertorial" column that Seldon said he was planning to place in the New York Times and solicited "bookings". The second letter announced Vintage's new policy of offering in-depth editorial coverage to those wineries who would pay the fee of the Vintage author and pay plaintiffs $1,000 per page, with an additional charge for color pages. The third letter announced that Vintage would not review products that did not advertise in Vintage. The Wine Spectator article liberally quoted from these letters.

In moving for summary judgment defendants asserted that the publication was true, that it did not have a defamatory meaning, that the article contained constitutionally protected expressions of opinion, and that plaintiffs, who were public figures, did not meet their burden of proving "actual malice".

In support of the motion, defendants submitted affidavits of its publisher Marvin Shanken, managing editor Harvey Steiman, and the senior editor who wrote the article, James Laube. These affidavits established that when Seldon's letters came to the attention of defendants, they determined, at an editorial meeting, that the new Vintage policy was worthy of coverage in Wine Spectator, that Laube, who was assigned to write the piece, interviewed Seldon and went over the three letters with him line by line and offered Seldon the opportunity to clarify or amplify the statements, that Seldon confirmed his authorship of the letters and their authenticity, and that Laube also interviewed employees of the New York Times and Los Angeles Times concerning Seldon's proposed "advertorial" in those papers.

The article at issue accurately reports the contents of the three letters, accurately quotes Seldon, and accurately quotes the positions of the New York Times and Los Angeles Times figures.

While finding that the article was "a truthful report of what plaintiffs stated in their letters to the wine community", the motion court denied defendants' motion for summary judgment. It did so because it concluded that the headlines describing the article, *"Vintage Magazine editorial Space for Sale"* in the table of contents and "Editorial Space for Sale in *Vintage"* on the page where the article appeared, could reasonably be construed to be defamatory by innuendo.

The motion court erred in straining to find that these headlines contained a defamatory meaning. The phrase "Editorial Space for Sale" accurately describes the Vintage policy. Plaintiffs did in fact offer editorial coverage in exchange for specified payments and refused to print editorial copy concerning wineries that did not purchase advertising in the magazine.

Even assuming arguendo that the headlines were ambiguous, the accurate description in the text of the article dispelled any possible misleading meaning of the headlines and indicated that the headlines were a fair index of the matter to which they referred. *(See, Cole Fisher Rogow v Carl Ally, Inc.,* 29 AD2d 423, 426, *affd* 25 NY2d 943; *Gambuzza v Time, Inc.,* 18 AD2d 351, 353-354.)

The case of *Schermerhorn v Rosenberg* (73 AD2d 276), relied on by the motion court, involves a headline that falsely attributed a damaging statement to the plaintiff which defendants actually knew plaintiff had not made and has no application to the instant situation where the headlines, both standing alone and in the context of the accompanying article, accurately reported the Vintage policy.

On this record, we find that since neither the headlines nor the article was false, there is no basis for a defamation action and the motion for summary judgment dismissing the complaint should have been granted.

We note that the motion court properly dismissed the cause of action based upon the printing of the letter to the editor in a subsequent issue of defendants' magazine. The letter set forth the facts upon which the writer's opinions were based and accordingly was a constitutionally protected expression of opinion. *(Steinhilber v Alphonse,* 68 NY2d 283.) Concur—Murphy, P. J., Carro, Asch, Milonas and Ellerin, JJ.