OPINION OF THE COURT
Rosalyn Richter, J.
In this action, plaintiff Georgeann Walsh Ward alleges defamation and right of privacy violations based on the use of her photograph, without her knowledge or consent, in a documentary produced by defendant Viacom International, Inc. Defendant Gene Klein, also known as Gene Simmons, is the bass-playing cofounder of KISS, a rock and roll band that came to prominence in the 1970s.[1] According to the complaint, plaintiff met Simmons in 1972, prior to the formation of KISS. For the next three years, plaintiff and Simmons were in an “exclusive, monogamous romantic relationship.” (Complaint 1i 15.) In 1976, plaintiff met her current husband with whom she has been in a “loving, monogamous relationship” ever since. (Complaint 1i 16.)
On or about July 24, 2004, Simmons and KISS were featured in a “rockumentary” entitled “When KISS Ruled the World” (the documentary) which aired on Viacom’s VH1 network. The program was repeated approximately four times over the next several months. Plaintiff alleges that the documentary repeatedly falsely portrayed her as an unchaste woman. According to the complaint, plaintiffs photograph was shown a number of times during the documentary, mostly during a segment highlighting Simmons’s sexual proclivities.
In that piece, Simmons boasts of his sexual prowess and his ability to sleep with any woman he wanted. At the beginning of the segment, the caption “24 Hour Whore” appears on the screen followed shortly by a photograph of plaintiff with Sim *650 mons. Simmons exclaims: “I was a 24 hour whore. All I ever thought about was sex.” Simmons then lists some of the casual sexual encounters he shared with women, such as a hotel maid who came to clean the room and a nurse in his doctor’s office. During one part of the segment, Simmons comments: “There wasn’t a girl that was off limits, and I enjoyed every one of them.” Plaintiffs photograph is briefly shown at or about the same time as Simmons’s remarks. A narrator then states: “These guys were wild,” and again plaintiffs photograph flashes across the screen. The complaint alleges that at another point in the documentary, a narrator comments: “Everywhere [Simmons] went he found a woman and it didn’t matter who they were, what size, shape or anything, he’d find a woman and disappear with her.” At a later point in the program, a photograph of plaintiff is purportedly shown while a narrator comments about KISS’s increasing commercialization: “It was no longer bagging every groupie in sight.”
In this motion, defendants move pursuant to CPLR 3211 (a) to dismiss the complaint based on documentary evidence and for failure to state a cause of action. It is well settled that whether a particular broadcast is defamatory “presents a legal question to be resolved by the court in the first instance.” (Aron-son v Wiersma, 65 NY2d 592, 593 [1985].) In assessing defamatory meaning, the words must be given a fair reading and must be construed in the context of the entire statement as a whole tested against the understanding of the average reader. (Alvarado v K-III Mag. Corp., 203 AD2d 135 [1st Dept 1994]; Aronson v Wiersma, 65 NY2d at 594.) If the words are not “reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction.” (Aronson v Wiersma, 65 NY2d at 594.) On the other hand, a court should not “strain to interpret [the alleged libelous words] in their mildest and most inoffensive sense in order to render them nondefamatory.” (Matherson v Marchello, 100 AD2d 233, 240 [2d Dept 1984].)
Applying these standards, defendants’ motion to dismiss plaintiffs defamation claims must be denied. Statements can be defamatory if they “tend[ ] to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of [her] in the minds of a substantial number of the community.” (Golub v Enquirer/Star Group, 89 NY2d 1074, 1076 [1997], quoting Mencher v Chesley, 297 NY 94 [1947].) Here, the court concludes that the juxtaposition of plaintiff’s *651 photographs alongside commentary by Simmons and others recounting Simmons’s repeated casual sexual encounters with various female strangers is reasonably susceptible of a defamatory meaning. The repeated use of plaintiffs photographs during the documentary could lead a reasonable viewer to conclude that plaintiff was a woman who would regularly make herself available to Simmons, at his beck and call, for casual sexual encounters. Although it is true that the documentary never mentions plaintiff by name, or otherwise identifies her, the use of her photographs during the “24 Hour Whore” segment could certainly lead a reasonable person to conclude that she was one of those women with whom Simmons had a casual sexual liaison.
Defendants argue that no defamatory meaning could be inferred because Simmons is simply describing his own conduct and not that of plaintiff. However, the fact that Simmons is recounting his own behavior does not defeat the inference that plaintiff participated in that behavior. This inference is buttressed by the fact that the photographs of plaintiff with Simmons involve sexually suggestive or provocative situations. One photograph is of plaintiff embracing Simmons, who is bare chested and wearing studded leather pants, and shows Simmons’s leg wrapped around plaintiff and plaintiff grabbing Simmons’s behind. Another photograph shows various members of KISS, including Simmons, in sexually provocative poses with various women. Although plaintiff is shown off to the side and not specifically partaking in the activity, an inference could be drawn that plaintiff, who is smiling in the photograph, was herself amenable to casual sexual encounters with Simmons. The court concludes that, viewed as a whole, the documentary is reasonably susceptible of a defamatory meaning and, thus, the motion to dismiss the defamation claims on those grounds is denied. (See Rejent v Liberation Publs., 197 AD2d 240 [1st Dept 1994] [publication of the plaintiff’s picture in a sexually suggestive manner implies that he is lustful and sexually promiscuous and thus states a claim for defamation].)
Defendants also argue that the defamation claims must be dismissed because plaintiff concedes that she had a sexual relationship with Simmons and thus admits that the allegedly defamatory inferences drawn from the documentary are true. To begin, the falsity of the statement is not an element of plaintiffs prima facie case but rather is a defense to the alleged defamation. (See, e.g., Garcia v Puccio, 17 AD3d 199 [1st Dept 2005] *652 [defendants’ reliance upon the apparent truth of the statement is premature at preanswer stage because a claim of truth is an affirmative defense to be raised in defendants’ answer].) In any event, plaintiffs complaint merely alleges that she had a romantic relationship with Simmons and does not admit that there was a sexual component to that relationship. Thus, defendants’ arguments do not provide a basis for this court to grant their preanswer motion to dismiss the defamation claims.
Defendants also move to dismiss the defamation claims on the ground that the complaint fails to allege defamation per se, a necessary requirement where, as here, no special damages are pleaded. It is well settled that
“[a] plaintiff suing in libel need not plead or prove special damages if the defamatory statement ‘tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of [her] in the minds of right-thinking persons, and to deprive [her] of their friendly intercourse in society.’ ” (Donati v Queens Ledger Newspaper Group, 240 AD2d 696, 697 [2d Dept 1997], quoting Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369 [1977].)
To constitute a slander per se, plaintiff need only show that the defamatory words alleged impute unchastity or promiscuity to her. (See, e.g., Harris v Hirsh, 228 AD2d 206 [1st Dept 1996].)
The court concludes that, based on the current state of the law, the documentary’s inference that plaintiff was available to satisfy Simmons’s desire for a casual sexual encounter at his whim constitutes libel per se because it could tend to expose plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of her in the minds of right-thinking persons. Likewise, the complaint alleges slander per se because a reasonable inference that can be drawn from the documentary is that plaintiff was an unchaste woman. (See Restatement [Second] of Torts § 574 [1977] [slander that imputes serious sexual misconduct to another needs no proof of special harm]; Stanton v Metro Corp., 357 F Supp 2d 369 [D Mass 2005] [statements falsely suggesting that a person is sexually promiscuous or sexually licentious are generally actionable as defamation]; Bryson v News Am. Publs., Inc., 174 Ill 2d 77, 672 NE2d 1207 [1996] [concluding, in the context of a libel lawsuit, that the word “slut” implies an accusation of fornication and thus falls within a category of statements that are actionable per se]; Smith v Atkins, 622 So 2d 795 [La Ct App 1993] [deciding defa *653 mation action in favor of a plaintiff law student against a professor who called her a “slut” in class].)[2]
The court recognizes defendants’ argument that changing social mores could affect how certain sexual conduct is viewed by the community, and that what was defamatory per se at one time may no longer be the case. (See, e.g., Hayes v Smith, 832 P2d 1022 [Colo Ct App 1991] [accusations of homosexuality are no longer slanderous per se].) Although consensual sexual relations between unmarried persons are certainly viewed differently than they once were, defendants do not cite to any legal authority or social science data to support their argument that allegations of unchastity, when combined with claims of promiscuity and casual sexual encounters such as those here, can no longer support a finding of defamation per se. The court has found no case in this state, or elsewhere, that stands for so broad a proposition, and absent appellate authority, this court is constrained from reaching the conclusion urged by defendants. Thus, the court denies defendants’ motion to dismiss the first two causes of action sounding in defamation.
Defendants also move to dismiss the third cause of action alleging violation of Civil Rights Law § 51, New York’s right to privacy statute. That provision allows an action for damages to be brought by “[a]ny person whose name ... is used within this state for advertising purposes or for the purposes of trade without the written consent [of such person]” (emphasis added). A person’s name is used “for advertising purposes” if it “appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service.” (Beverley v Choices Women’s Med. Ctr., 78 NY2d 745, 751 [1991]; see also Davis v High Socy. Mag., 90 AD2d 374 [2d Dept 1982] [to constitute a “trade purpose,” the use of the plaintiffs name must be spurred by the profit motive or used to encourage sales or distribution of the publication].)
The court concludes that defendants’ motion to dismiss must be granted because the use of plaintiffs image in the documentary does not constitute a use for advertising or trade purposes *654 as required by the statute. It is well settled that editorial uses of photographs in documentaries or “publications [concerned with] newsworthy events or matters of public interest” simply do not fall within the statute’s prohibition. (See Finger v Omni Publs. Intl., 77 NY2d 138, 141-142 [1990] [statutory provisions prohibit the use of names for advertising purposes or for the purposes of trade only, and nothing more].) Here, a viewing of the documentary makes clear that it is just that — a documentary. Plaintiff points to nothing in the program to suggest that it was used as a vehicle to promote Simmons’s or KISS’s music or merchandise, or otherwise constituted an “advertisement.”
The fact that Viacom and VH1 may have profited from the airing of the documentary or that the program created media exposure for Simmons and his band is not relevant because “[i]t is the content of the [publication] and not the defendant’s motive or primary motive to increase circulation which determines whether it is a newsworthy use, as opposed to a trade usage, under the Civil Rights Law.” (Stephano v News Group Pubis., 64 NY2d 174, 185 [1984].) Finally, any possible use by VH1 or Viacom of plaintiffs image to advertise the documentary constitutes an “incidental use” and is not actionable. (See Groden v Random House, Inc., 61 F3d 1045 [2d Cir 1995] [advertisement for book employing the plaintiff’s photograph held to be incidental use].) Thus, the cause of action based on Civil Rights Law § 51 is dismissed.
Accordingly, it is ordered that defendants’ motion to dismiss the first two causes of action alleging defamation is denied; and it is further ordered that defendants’ motion to dismiss the third cause of action alleging violation of Civil Rights Law §§ 50, 51 is granted.

. Defendant Gene Simmons Company is an entertainment production company run by Simmons, and defendant KISS Catalogue, Ltd. is the corporation that owns all rights to KISS.

. As noted above, contrary to defendants’ assertion, the complaint does not contain any admission by plaintiff to having had a sexual relationship with Simmons. Rather, the complaint states that the two had a monogamous romantic relationship. If, in fact, discovery reveals that plaintiff and Simmons had engaged in a sexual relationship, defendants may be able to establish their affirmative defense of truth.